FORREST G. SIMPSON, Plaintiff-Appellant, *v.* JED JOHNSON, Defendant-Appellee.

Third District   No. 75-455

Opinion filed February 14, 1977.

Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago (A. J. Horwitz, of counsel), for appellant.

Gates W. Clancy, of Geneva (James Mills, of counsel), for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Forrest Simpson, brought this action in the circuit court of La Salle County against defendant, Jed Johnson, seeking to recover damages for medical malpractice. The jury returned a verdict in favor of the defendant. Plaintiff's post-trial motions were denied and this appeal follows.

On January 2, 1971, plaintiff Simpson was doing some carpentry work on a building in Marseilles, Illinois. He fell from a scaffold situated approximately 22 feet above the ground landing on hard frozen ground. He fell on his outstretched right arm, and his right shoulder, elbow, and arm sustained the force of his fall. The defendant, Jed Johnson, a general practitioner in Marseilles, was called to the scene where he examined defendant and performed some initial procedures. Plaintiff was then taken to the hospital where he was treated further by the defendant. Either as a result of shock or the injection given him for pain, plaintiff lost consciousness in the hospital and when he recovered consciousness later, his right arm had been placed in a cast and immobilized. The cast was for the purpose of immobilizing plaintiff's dislocated elbow caused by fractures of the forearm bones. The cast extended beyond the wrist almost to the knuckles of plaintiff's right hand.

There is substantial testimony regarding what happened between January 2, 1971, and March 2, 1971, which need not be detailed at this

juncture. It is sufficient to say that when the cast was finally removed on March 2, 1971, it was discovered that the plaintiff had serious problems regarding his wrist. It is the injury to the wrist which is the basis of this litigation. The substance of the charges of medical malpractice are that the defendant negligently failed to discover, diagnose or properly treat the Colles's fracture of the plaintiff's right wrist. Plaintiff was referred to another physician who performed surgical procedures in 1971 and 1972, which were not successful in remedying the consequences of the injury to plaintiff's wrist.

Dr. Paul Meyer, the physician who performed the surgical procedures, was called by the plaintiff as an adverse party under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60). (Meyer was originally named as a party defendant, but during the course of the trial the action was dismissed as to him.) In addition, Dr. Frank Friedman testified as an examining medical expert on behalf of the plaintiff. Dr. Johnson testified in his own behalf and also called Dr. G. Alan Neufeld to testify as an expert witness, the latter doctor having neither treated nor examined the plaintiff.

From the evidence it is undisputed that the defendant did not discover or treat any fracture of the wrist at the time of his original treatment on January 2, 1971, or during the period prior to the removal of the cast on March 2, 1971. The medical testimony is directed primarily to the question of whether the defendant employed reasonable medical skill in discovering and diagnosing the injuries occasioned by the plaintiff's fall.

On this appeal the plaintiff argues first, the trial court erred in refusing to direct a verdict in his favor on the issue of liability or to grant his motion notwithstanding the verdict and second, he should have been granted a new trial because of the occurrence of prejudicial trial errors.

■■ The general rule in a medical malpractice case is that the plaintiff has the burden to prove the proper standard of care imposed upon the defendant and then to prove by affirmative evidence an unskilled or negligent failure to comply with the standard and a resulting injury. *Livengood v. Howard,* 11 Ill. App. 3d 1, 295 N.E.2d 736; *Estell v. Barringer,* 3 Ill. App. 3d 455, 278 N.E.2d 424; *Comte v. O'Neil,* 125 Ill. App. 2d 450, 261 N.E.2d 21.

According to plaintiff, the evidence presented in support of his cause of action was substantial and unrefuted. If, as he argues, the plaintiff's evidence was unrefuted, then it follows that the application of the *Pedrick* rule (*Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill. 2d 494, 229 N.E.2d 504) requires that the trial court grant his motion for directed verdict at the close of all the evidence or alternatively, a judgment notwithstanding the verdict pursuant to his post-trial motion.

■■ The major thrust of plaintiff's evidence is directed toward three

areas of the defendant's diagnosis and treatment. The first of these areas deals with the defendant's failure to X-ray plaintiff's wrist on January 2, 1971, the contention being that if proper diagnostic techniques had been employed, the wrist would have been X-rayed and the Colles's fracture of the wrist discovered. The second involves the failure of the defendant to discover the existence of the Colles's fracture during the period January 2, 1971, to March 2, 1971. The third area relates to the improper treatment administered by the defendant after he removed the cast and discovered the fracture on March 2, 1971. While we agree with plaintiff there is ample evidence from which the defendant's duty and breach thereof may be inferred, we are not prepared to say that such evidence is unrefuted or that the evidence so overwhelmingly favors the plaintiff that no contrary judgment may stand. Of course the principal issue is whether under the circumstances the defendant should have X-rayed the plaintiff's wrist. In this respect it is undisputed that defendant did not X-ray the plaintiff's wrist. In his explanation of his failure to do so, the defendant insists that X-rays were not indicated because the wrist appeared normal, moved normally and did not evidence any localized pain. Whether this conduct was in accord with the standard of skill required is, we believe, a question of fact. Likewise, whether the complaints of the plaintiff were sufficiently specific during the period the cast was in place or whether the defendant should have observed other symptoms warranting examination of the wrist area by X-ray or other medical techniques, presented a question of fact. With respect to what occurred during this period, there is conflicting testimony both as to the nature and extent of the plaintiff's complaints and the conclusions which the defendant should have drawn from what he heard and saw. Lastly, the manner of improper treatment after the cast was removed depends in part upon what had already occurred. It is undisputed that defendant employed improper treatment for a new Colles's fracture. Since the defendant treated it the same as if it had been healed, there remains an issue of fact concerning the justification of the defendant for considering the fracture as healed under the circumstances and treating it accordingly. We are not prepared to hold that the evidence in support of plaintiff's claim is unrefuted or even substantially undisputed.

This brings us to plaintiff's general assignment of error that prejudicial trial errors occurred depriving him of a fair trial and requiring that he be granted a new trial. We agree that a new trial is required.

Although the plaintiff makes numerous assignments of error regarding occurrences which took place during the trial, we believe it necessary to consider only the following. One, whether the trial court erred in permitting testimony relating to some undisclosed accident. Two, whether the trial court erred in permitting Dr. Neufeld to testify and in

failing to grant a new trial when it was discovered after the trial was over, that the Doctor had testified falsely concerning his acquaintanceship and relationship with members of the jury.

The first assignment of error which we shall discuss is the plaintiff's claim the trial court erred in permitting evidence which suggested or implied that plaintiff's fractured wrist was the result of some undisclosed occurrence which took place sometime between January 2 and March 2, 1971. At the beginning of the trial, plaintiff argued his motion in limine to restrain defendant from implying and making innuendos to the jury that there might have been another accident, unless defendant first showed some evidence sufficient to justify it. The trial court granted the motion. When it became apparent the defense was ignoring the ruling, plaintiff renewed his motion. The trial court then reversed itself and refused plaintiff's motion. During cross-examination of the plaintiff as well as during direct examination of the defendant, counsel for the defendant asked numerous questions which sought to imply that because of weather conditions, plaintiff's physical condition, and the presence of the cast, plaintiff had or could have fallen causing the Colles's fracture. During his final argument, defense counsel argued to the jury that the injury did not occur on January 2, 1971. There was no evidence presented of any intervening occurrences which might have caused the wrist fracture and consequently no evidence of any relation between the injury complained of and any other occurrence, other than plaintiff's fall from the scaffold on January 2, 1971.

According to the plaintiff, the trial court erroneously permitted the introduction of evidence relating to possible intervening occurrences because such evidence was irrelevant. Furthermore, such evidence was highly prejudicial because it permitted and encouraged the jury to consider or speculate about facts not supported by the record. In support of the trial court's action in permitting such evidence, the defendant argues that the evidence was proper in support of its claim that the fracture of the wrist did not occur at the time of the fall on January 2, 1971.

■■ The plaintiff suggests in his argument that evidence of other causes for an injury, either prior or intervening, is inadmissible in the absence of allegations in the defendant's pleading by way of an affirmative defense. We do not believe the issue of other causes of an injury need be alleged as an affirmative defense and *Marut v. Costello*, 34 Ill. 2d 125, 214 N.E.2d 768, relied on by plaintiff, does not support the argument because in *Marut*, no issue regarding such a requirement was made by either party. That the defendant in the *Marut* case might have made such a claim by way of affirmative defense does not necessarily demonstrate the necessity of such procedure. We are generally inclined to

believe that an answer which denies that an injury was the result of or caused by the defendant's conduct is sufficient to permit the defendant in support of his position to present evidence that the injury was the result of another cause.

The matter of pleading does suggest some areas of potential confusion in resolving the issue presented. Where the claim is made that an injury was not caused by the defendant's conduct, the evidence of another cause may arise in the context of impeaching the plaintiff's testimony or in the context of proximate causation. In either case the same considerations are present. Whether the evidence relates to the direct testimony of a witness and hence is considered impeachment, or is presented as evidence of proximate cause, it must be shown there was a collateral occurrence and that there is a connection between the collateral occurrence and the injury or condition complained of.

In *Caley v. Manicke*, 29 Ill. App. 2d 323, 173 N.E.2d 209, the court discusses at some length the considerations underlying evidence of other causes of an injury and the necessary limitations on such testimony. (This case was reversed on other grounds in *Caley v. Manicke*, 24 Ill. 2d 390, 182 N.E.2d 206. However, the court specifically approved of the appellate court opinion and its resolution of the issue regarding admission of evidence of other accidents.) In the *Caley* case, defense counsel asked questions of plaintiff concerning an automobile accident which took place approximately a month prior to the accident in question and also an accident which took place approximately a year later. Plaintiff was also asked whether he had fallen at home. The questions were permitted over objection and on the assurance that the accidents would be connected up. Plaintiff admitted that the prior and subsequent automobile accidents had occurred, but denied he had ever slipped at home. When defense counsel offered no additional evidence to the jury connecting the incidents complained of, the trial court directed at the close of the evidence that the testimony be stricken and the jury was directed to disregard such testimony. The jury returned a verdict in favor of the plaintiff and the defendant argued that the exclusion of such evidence was improper. In holding that the trial court properly excluded such evidence, the court emphasized that before evidence of collateral incidents could become relevant, there must be both evidence of the incident as well as its connection with the injury complained of. The occurrence of a collateral event is irrelevant to the issues of the case unless some connection is established between such event and an issue in the case. If only the event is established, as in the *Caley* case, it becomes irrelevant in the absence of the connecting testimony and is prejudicial because of the innuendos to which such evidence is susceptible.

In *Marut v. Costello*, 34 Ill. 2d 125, 214 N.E.2d 768, the court approved

the reasoning in *Caley v. Manicke*, 29 Ill. App. 2d 323, 173 N.E.2d 209, and again held that even where a prior accident was shown, cross-examination with respect to such prior accident was improper where the testimony failed to connect the accident with the plaintiff's subsequent injury. In *Marut* the testimony indicated that the earlier accident, a fall in a restaurant, involved injury to the neck and shoulder area while the injury sued on was to the lower back as a result of a fall on steps. See also *Gordon v. Checker Taxi Co.*, 334 Ill. App. 313, 79 N.E.2d 632.

■■ The foregoing discussion and the cases cited involve situations where the existence of a prior or subsequent incident is undisputed. In the instant case there is no evidence of any particular incident occurring between the fall on January 2 and the removal of the cast on March 2. The most that can be said about the references by defense counsel is that perhaps there could have been an intervening occurrence. Since no intervening occurrence is shown, it follows there can be no connection between such undisclosed occurrence and the condition complained of by the plaintiff. We believe the trial court's initial ruling on the plaintiff's motion in limine was correct and the trial court erred when it later permitted such evidence irrelevant to any issue in the case. Such evidence was not only irrelevant, but prejudicial, since it invited speculation by the jury on an issue without foundation in the evidence.

Plaintiff next complains the trial court erred in permitting Dr. G. Alan Neufeld to testify. The plaintiff's objections are twofold; first, defense counsel either knew or should have known that Dr. Neufeld would testify for the defendant and that this fact should have been communicated in response to prior interrogatories and second, permitting Dr. Neufeld to testify when the prospect of his testimony was first made known to the plaintiff after the jury had been selected prevented plaintiff's counsel from questioning prospective jurors regarding this prospective witness and his relation to any of the jurors.

Pursuant to interrogatories served periodically during the pretrial period and as late as two days after the trial commenced, the defendant responded in the negative to inquiries about any expert witness that the defendant would propose to call. Nevertheless, seven days after the trial commenced, the defendant responded to the interrogatories listing Dr. Neufeld for the first time as a proposed expert witness. Although the court seems to have had some reservations to permitting Dr. Neufeld to testify, it did allow such testimony over the objections of plaintiff. The court did permit plaintiff to take Dr. Neufeld's deposition on that date.

■■ Generally speaking, the question of whether an expert witness who was not employed until after trial commenced should be permitted to testify is within the discretion of the trial court (*Burns v. West Chemical Products, Inc.*, 12 Ill. App. 3d 947, 299 N.E.2d 455, and *Karris v. Goldman*,

118 Ill. App. 2d 85, 254 N.E.2d 605.) Although we do not commend the practice, there is no rule prohibiting either party from first engaging an expert after the trial has commenced and indeed, unless there would appear to be some reason why the expert was not employed until such late date, the better practice would appear to suggest that the testimony of such a latecomer should not be permitted. In the instant case there was some dispute as to when Dr. Neufeld was employed or when it became known that he would testify, because it appears that Dr. Neufeld was represented in a medical malpractice suit against him by the same defense counsel representing the defendant in this case. Despite such evidence, we are not prepared to say the trial court abused its discretion in permitting the witness to testify for this reason.

However, the initial disclosure of this expert witness at such a late stage in the trial did result in another serious prejudicial error. As noted earlier, Dr. Neufeld's name as a prospective expert witness was not communicated to the plaintiff until seven days after the trial commenced. At the time the trial court allowed the plaintiff to take the deposition of Dr. Neufeld the judge stated "* * * if any of these witnesses * * * turn out to be the personal physicians of any of these jurors, I'm not going to let them testify."

During the deposition of Dr. Neufeld, a list of the jurors and other information contained on the questionnaires was reviewed with Dr. Neufeld and he affirmed that none of the names of the jurors or their spouses were familiar to him as people he knew or as patients. According to the post-trial motion as supported by affidavit, the fact was that juror Ann Reed had been personally treated by Dr. Neufeld and had known him for years. Also the juror Mrs. Maurice Hays lived approximately 100 paces from Dr. Neufeld's residence. From the questions and answers given at the voir dire examination of prospective jurors, it appeared that three other jurors worked at the same place as Mrs. Hays' husband (where one juror's husband was plant manager) or had spouses who worked there.

■■ The above facts concerning the relation of Dr. Neufeld and the jurors was not disputed by the defendant and he rested his response on the rule that the jury's verdict can not be impeached by facts or affidavits relating to individual jurors. However, we conclude that plaintiff's motion is not an effort to impeach the verdict of the jury, but rather relates to the propriety of permitting Dr. Neufeld to testify when it appears that the facts are contrary to one of the conditions upon which his original permission to testify was based. The trial court recognized that because Dr. Neufeld had practiced in the community for many years, and by virtue of the procedure invoked by the defendant, the plaintiff was entitled to require that Dr. Neufeld have no relation with the jurors which

might affect their impartiality. Plaintiff does not assert that the jurors were in fact partial, but insists only that their potential partiality deprived him of a fair trial. (75 Am. Jur. 2d *Trial* § 31, at 143-44 (1974).) We agree. Defendant relied rather substantially on the testimony of Dr. Neufeld and under the circumstances, we have no alternative but to hold that plaintiff was deprived of a fair trial because of the circumstances which developed regarding Dr. Neufeld's testimony. In this connection it should be noted the trial court did all that it could to protect the interests of the plaintiff and at the same time permit the defendant to use all the witnesses he desired. The resulting error could have been avoided if the defendant had presented the name of his expert witness prior to the commencement of the trial.

Other errors have been asserted by plaintiff, but since we believe a new trial is required and that such alleged errors will not reoccur, we find it unnecessary to consider them in this opinion. For the foregoing reasons the judgment of the circuit court of La Salle County is reversed and remanded with directions the plaintiff be granted a new trial.

Reversed and remanded with directions.

ALLOY, P. J., and SCOTT, J., concur.