MELINE A. SEARS, Plaintiff, *v.* KOIS BROTHERS EQUIPMENT, INC., *et al.,* Defendants and Third-Party Plaintiffs—Appellees.—(Garwood Industries, Inc., *et al.,* Third-Party Defendants—Appellants.)

First District (3rd Division)   No. 80—599

Opinion filed November 24, 1982.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Stephen Sonderby, and Sloan and Connelly, P.C., all of Chicago (Leonel I. Hatch, Charles H. Cole, Stephen R. Swofford, Joel W. Ostrander, and Michael P. Connelly, of counsel), for appellants.

William V. Johnson, of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellees.

JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, Meline A. Sears, brought this action against Kois Brothers Equipment, Inc. (Kois Bros.) and Melvin Dirksen to recover damages for the wrongful death of her husband, Earl Sears, Sr., who was killed when his automobile collided with two dump bodies which had fallen on the Illinois Tollway from a Kois Bros. truck driven by Dirksen. The defendants filed a third-party complaint for indemnity against Garwood Industries, Inc. (Garwood), which had loaded the dump bodies on the truck, against Orr Construction Company and/or International Bridge Construction Company (Orr), which were en-

gaged in road repair activities near the scene of the accident, and against the Illinois Toll Authority (Tollway).

Kois Bros. and Dirksen reached a settlement with the plaintiff after the cause was assigned for trial but before the jury was selected. This matter then proceeded to trial in the circuit court of Cook County on the third-party complaint for indemnity. The jury returned a verdict in favor of Kois Bros. and Dirksen and against the third-party defendants. The trial court entered judgment on the verdict. Post-trial motions filed by the third-party defendants for judgment notwithstanding the verdict or a new trial were denied, and the third-party defendants appeal.

On appeal, the third-party defendants contend that (1) Kois Bros. and Dirksen were guilty of active negligence as a matter of law; (2) neither the conduct of Orr nor the conduct of the Tollway was the proximate cause of Sears' death; (3) that the Tollway was not actively negligent; and (4) certain rulings by the trial court on the evidence and on the jury instructions were erroneous.

Melvin Dirksen testified that on May 12, 1972, he was employed by Kois Bros. of Denver, Colorado. Dirksen was an experienced truck driver who had driven trucks of various sizes from 1955 until 1972. On May 12, 1972, Dirksen went to Garwood's facility in Wayne, Michigan, in order to pick up a Kois Bros. truck loaded with dump bodies manufactured by Garwood. Upon his arrival at approximately 8:30 p.m., a Garwood employee pointed out the 1972 Dodge truck, a cab and chassis unit, which Dirksen was to drive to Denver. Affixed to the chassis were four dump bodies, two in the front and two in the back. The two front bodies were welded together with metal straps, as were the two back bodies. The lower front body also had straps welded to it which were bolted to the frame of the truck. There were no straps bolted from the lower back body to the frame; instead, two bands were placed around the bodies and the frame of the truck.

Prior to his departure, Dirksen inspected the load to determine if the bands were secure. In his opinion, the truck was safe for travel. Furthermore, it was his position that if Garwood had loaded the truck, the load was safe.

Dirksen left Michigan that evening and entered Illinois at approximately 2 a.m. As he approached the Calumet exit on Interstate 294, Dirksen was traveling at approximately 50-55 miles per hour when he hit an extremely rough section of the road. The two rear dump bodies fell off the chassis and landed in the lane nearest the median strip. Dirksen immediately parked the truck, grabbed his flashlight, and proceeded to wave over oncoming traffic. Although Dirksen success-

fully alerted several drivers to the obstruction in the road, the automobile driven by the decedent hit the dump bodies.

Dirksen did not recall seeing any road construction signs or barricades prior to the rough road. He did not know if there were any flares, reflectors or warning devices on the truck.

George Kois testified that he was president of Kois Bros., a distributor and manufacturer of refuse and truck equipment. Kois Bros. distributes the Garwood product line in Colorado.

On May 12, 1972, Kois went to Garwood's facility in Wayne, Michigan, around noon with the intention of driving to Denver the truck loaded with dump bodies. Because the truck was not ready at the time, Kois decided to drive a refuse truck and left instructions for Dirksen to take the truck with the dump bodies.

Prior to his departure, Kois informed three Garwood employees that a customer of Kois Bros. had a problem with dump bodies shifting on a previous load when they had been banded to the truck. Kois recommended that Garwood load the dump bodies with a weld strap and bolt method. However, Kois did not relay this information to Dirksen.

On his drive to Denver, Kois encountered an extremely rough portion of road on the Illinois tollway just west of the Indiana border that appeared to have a very sharp drop with many potholes. This rough area was the scene of Dirksen's accident.

Several former employees of Garwood testified that the placing of two bands around the back dump bodies was an unsafe method of securing the load. For purposes of this appeal, Garwood concedes that it negligently affixed the cargo to the truck and that this negligence was a proximate cause of the accident involving the decedent.

Earl Sears, Jr., the decedent's son, testified that on May 12, 1972, he and his father were driving west on Interstate 80-94 before it became Interstate 294. Sears, Jr., was in a separate automobile behind his father's vehicle. Sears, Jr., testified that he encountered construction activity at Torrence Avenue near the Calumet Expressway. Sawhorse barricades with yellow blinking lights and a lighted arrow indicated that the construction was in progress. The barricades extended the entire distance of the construction (approximately three miles) except for exit and entrance ramps.

The accident occurred at the end of the construction area on a bridge on Interstate 294. Sears, Jr., testified that the surface of the road on the bridge area became very rough. Both he and his father reduced their speed to approximately 45-50 miles per hour. Sears, Jr., a truck driver for six years, stated that it was the custom and prac-

tice of truck drivers to carry flares or reflectors in case of an emergency.

## I

Garwood, Orr and the Tollway (indemnity defendants) first argue that the trial court erred in denying their motions for judgment notwithstanding the verdict because Kois Bros. and Dirksen were not entitled to indemnity since they were guilty of active negligence as a matter of law. They assert that the evidence revealed that Dirksen negligently inspected the cargo prior to his departure; that he violated a law prohibiting the driving of a vehicle in an unsafe condition (Ill. Rev. Stat. 1971, ch. 95½, par. 12—101(a)); that he drove without caution through the construction area; and that he violated a law requiring a truck driver to carry certain flares, lanterns and red flashers in case of an emergency. (Ill. Rev. Stat. 1971, ch. 95½, par. 12—702(a).) The indemnity defendants also argue that although Kois was aware of a prior problem with dump bodies shifting when they were only banded to the truck, he did not warn his driver of this fact.

Third-party indemnity is allowed to a tortfeasor whose misconduct is passive in comparison to the misconduct of another tortfeasor whose wrongdoing can be characterized as active and the primary cause of the plaintiff's injuries. (*Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58.) Because the words "active" and "passive" are imprecise and terms of art, they must be applied in accordance with concepts developed on a case by case basis rather than in accordance with the usual dictionary definitions of the words. (*Marchi v. Indiana Harbor Belt R.R. Co.* (1980), 83 Ill. App. 3d 1005, 404 N.E.2d 938.) Indemnification is available only when there is a qualitative distinction between the negligence of the two tortfeasors. (*Kuhn v. General Parking Corp.* (1981), 98 Ill. App. 3d 570, 424 N.E.2d 941.) It will not be granted when the first tortfeasor is actively negligent despite the active negligence of the second tortfeasor. (*Hanson v. Cresco Lines, Inc.* (1978), 57 Ill. App. 3d 168, 372 N.E.2d 936.) In order that the indemnitee's conduct be considered as passive or only secondarily contributing to the resulting injury, it must appear that he did not breach an affirmative duty owed to the plaintiff in the underlying action. (*Donaldson v. Holy Family Hospital* (1981), 94 Ill. App. 3d 285, 418 N.E.2d 873; *Peterson v. Tam O'Shanter Racquet Club, Inc.* (1980), 90 Ill. App. 3d 1029, 414 N.E.2d 181; *Burgdorff v. International Business Machines* (1975), 35 Ill. App. 3d 192, 341 N.E.2d 122.) The question of active-passive negligence and the imposition of third-party indemnity is normally a question of fact

for the jury to determine. *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868; *Zizzo v. Ben Pekin Corp.* (1979), 79 Ill. App. 3d 386, 398 N.E.2d 382.

In answer to the indemnity defendants' argument that the trial court erred in denying their motions for judgment notwithstanding the verdict, Kois Bros. and Dirksen contend that there was ample evidence to support the jury's finding that they were free from major fault. They argue that Dirksen exercised due care in his inspection of the load; that Dirksen was not driving negligently; and that Dirksen's decision to use a flashlight to warn the oncoming traffic was reasonable under the circumstances. When all of the evidence is viewed in its aspect most favorable to Kois Bros. and Dirksen, we cannot say that it so overwhelmingly favors the indemnity defendants that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Thus, the trial court properly denied the motions for judgment notwithstanding the verdict.

## II

Both Orr and the Tollway argue that they were entitled to judgment notwithstanding the verdict because their alleged misconduct, the creation of a dangerous road condition, was not the proximate cause of Sears' death. They assert that their conduct, at most, furnished a condition by which the accident was made possible and that the intervening conduct of others in creating and transporting a dangerous load was the proximate cause of the accident.

■ We first note that the evidence established that the surface of the road on the bridge where the accident occurred suddenly became very rough and that there was no warning to alert the driving public of this danger. We believe that such evidence was sufficient to support the jury's finding that both the dangerous road condition created by Orr and the Tollway and the improper loading by Garwood were proximate causes of Sears' death. There can be more than one proximate cause of an injury. (*Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 413 N.E.2d 1242.) In such a situation, one guilty of negligence cannot avoid responsibility merely because another person is guilty of negligence contributing to the same injury, even though the injury would not have occurred but for the negligence of the other person. *Watson v. Chicago Transit Authority* (1973), 12 Ill. App. 3d 684, 299 N.E.2d 58.

■ ■ We also note that to escape liability for their negligence, the indemnity defendants must demonstrate that the intervening event was unforeseeable as a matter of law. (*Davis v. Marathon Oil*

*Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.) In our judgment, it is not unforeseeable that an improperly loaded vehicle would utilize the public roads.

Our supreme court has repeatedly stated that the question of proximate cause is ordinarily a question of fact for the jury. (See *Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 374 N.E.2d 203, and cases cited therein.) Because we cannot say that the evidence, when viewed most favorably to Kois Bros. and Dirksen, so overwhelmingly favors Orr and the Tollway that no contrary verdict could ever stand (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504), the trial court properly denied the motions for judgment notwithstanding the verdict.

### III

The Tollway also argues that it was entitled to judgment notwithstanding the verdict because, assuming that it was negligent in failing to warn the public of the dangerous condition of the roadway, said negligence was passive in character. The Tollway supports this position by pointing out that pursuant to a contract between the Tollway and Orr, it was the responsibility of Orr to establish and maintain barricades and warning devices. We first note that the Tollway cannot delegate the duty it owed to the public by a contract with a third party. Furthermore, as we have previously discussed, the question of whether a party is actively or passively negligent is a question of fact for the jury. Because there was ample evidence to support the jury's finding that the Tollway was actively negligent, we must agree with the trial court's denial of the Tollway's motion for judgment notwithstanding the verdict.

### IV

The indemnity defendants also contend that certain rulings by the trial court on jury instructions and on the evidence were erroneous.

In support of their argument that Kois Bros. and Dirksen were actively negligent, the indemnity defendants presented evidence which they believed would prove that Dirksen drove an unsafe truck on the Tollway, that he drove without caution through a construction area containing barricades with yellow flashing lights, and that, once the dump bodies fell onto the Tollway, he failed to display the customary red emergency warning devices. In connection with these theories of active negligence, the indemnity defendants tendered certain instructions reciting three provisions of the Illinois Motor Vehicle Code. They contended that Dirksen violated these provisions and that said viola-

tions were the proximate cause of Sears' death. The trial court refused to tender these instructions to the jury.

Illinois law is clear that the violation of a statute designed for the protection of human life or property is *prima facie* evidence of negligence. (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881.) A party seeking an instruction on the existence of a statute in effect at the time of the occurrence must demonstrate that the statute was intended to protect against the injury which occurred, and that the injured party is within the class intended to be protected. *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.

Dirksen and Kois Bros. do not contend that the three provisions of the Motor Vehicle Code were not intended to protect against the injury which occurred or that Sears was not within the class intended to be protected. Rather, they assert that there was no evidence to support the tendering of these instructions.

The pertinent portion of Garwood's Instruction No. 7 was as follows:

> "It is unlawful for any person to drive on any highway any vehicle which is in such an unsafe condition as to endanger any person or property. Ill. Rev. Stat. 1971, ch. 95½, par. 12—101(a)."

We agree with Dirksen and Kois Bros. that there was no evidence that the vehicle itself was in an unsafe condition. Thus, the trial court correctly refused to tender this instruction.

The pertinent portion of Garwood's Instruction No. 11 was as follows:

> "When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed past such signal only with caution. Ill. Rev. Stat. 1971, ch. 95½, par. 11—309(2)."

Dirksen and Kois Bros. argue that the trial court correctly refused to tender this instruction because the yellow lens existed to indicate a lane closing, not to warn of the rough road. We agree. Furthermore, Sears' testimony reveals that the accident occurred on a rough portion of the bridge past the construction area and the yellow lights.

The pertinent portion of Garwood's Instruction No. 13 was as follows:

> "When a truck is disabled on any highway or shoulder at night, the driver shall display a lighted fusee, a lighted red electric lantern or a portable red emergency reflector immediately at the traffic side of the vehicle. The driver of such vehicle may simultaneously flash the two front and two rear turn signals as a warning to vehicles and continue flashing until the portable

signals have been placed. Ill. Rev. Stat. 1971, ch. 95½, par. 12—702(c)."

We agree with Dirksen and Kois Bros. that this instruction was inapplicable because there was no disabled truck on the highway.

Garwood next argues that the trial court erred in excluding from evidence a copy of the distributorship agreement between Garwood and Kois Bros. Garwood contends that this document would have revealed that Kois Bros. transported the load at its own "cost and risk in respect to all loss, destruction or damage from any cause whatsoever." We agree with the trial court that this document was irrelevant to the issue of whether Kois Bros. was actively negligent and that it was properly excluded.

Garwood also contends that the trial court improperly allowed George Kois to testify that he told certain Garwood employees that one of his customers had a problem with dump bodies shifting on a previous load when they had been banded to the truck. Garwood contends that this testimony was inadmissible hearsay. However, this testimony was clearly not offered as proof that another accident had occurred. Rather, it was offered to show that Garwood had notice that merely banding the dump bodies to the chassis was improper. Thus, the trial court committed no error in this regard.

■ Orr also argues that the trial court erred in refusing to allow the jury to take a diagram of the construction area and accident scene into the jury room. Considerable discretion is given to the trial court as to the exhibits which may be taken into the jury room. (*Wetherell v. Matson* (1977), 52 Ill. App. 3d 314, 367 N.E.2d 472; *Kaspar v. Clinton-Jackson Corp.* (1969), 118 Ill. App. 2d 364, 254 N.E.2d 826.) In the instant case the diagram was used extensively by Earl Sears, Jr., for demonstrative purposes during his testimony. We cannot say that the trial court abused its discretion in not allowing it to go to the jury during deliberations.

■ Finally, Orr argues that a certain comment by the trial court constituted an improper oral instruction to the jury. During closing arguments, the following colloquy occurred:

[Orr's counsel:] "In the same regard, I believe the Court will instruct, and I won't go through them, that there are State and Federal statutes which require a driver in this situation to have those warning devices."

[Dirksen & Kois Bros.' counsel:] "I object. There is no testimony whatsoever that those flares are required in this situation, and it's not in any instruction."

The Court: "I'll sustain as to the word 'in this situation.' It's

just the opposite, as a matter of fact. The Court will read the law to you. I will sustain the objection."

Subsequently, the trial court did in fact instruct the jury that State and Federal statutes require a truck driver to carry emergency warning devices.

We agree with Orr that the trial court erred in sustaining the objection to counsel's comment and in stating "it's just the opposite, as a matter of fact." However, we cannot say that the comment was an oral instruction since the court specifically stated that it would instruct the jury on the law in the future. In addition, we do not believe that the comment constitutes reversible error since, as stated above, the court did give the instructions to the jury together with the other applicable law in the case.

Orr relies on *Kinser v. Kruse* (1972), 4 Ill. App. 3d 987, 283 N.E.2d 120, in which a judgment was reversed and remanded for a new trial because of the trial court's hurried and indistinct reading of the instructions. In addition, when a juror commented that he could not hear the instructions, the court stated, "This is not really for you. This is mostly for the court reporter now." (4 Ill. App. 3d 987, 988.) The situation in *Kinser* is certainly distinguishable from the facts in the instant case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.