NO. 4-05-0328                                    Filed: 6/27/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| SALLY LOUISE NOLAN, Individually and as Special Administratrix of the Estate of CLARENCE NOLAN, Deceased, | ) ) ) | Appeal from Circuit Court of Vermilion County |
| Plaintiff-Appellee, | ) | No. 01L117 |
| v. | ) | |
| WEIL-McLAIN, | ) | Honorable |
| Defendant-Appellant. | ) ) ) | Craig H. DeArmond, Judge Presiding. |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff, Sally Louise Nolan, as administratrix of the estate of her husband, Clarence Nolan (decedent), sued numerous manufacturers of asbestos-containing products, including defendant, Weil-McLain. Her complaint alleged the manufacturers were responsible for decedent's injuries and later death. Before trial, all manufacturers but defendant settled or were dismissed. A jury returned a verdict against defendant, awarding plaintiff $2,368,000.

Defendant appeals, arguing that (1) the trial court erred by excluding evidence of decedent's other exposures to asbestos; (2) the trial court erred by refusing to give a contributory-negligence instruction offered by defendant; and (3) remarks made by plaintiff's counsel during closing argument were so prejudicial as to require a new trial. We affirm.

Initially, we note the trial court issued a 58-page order containing a meticulously detailed recitation of the evidence, findings, and conclusions. We recite only those facts necessary for an understanding of the issues to be resolved on appeal.

Decedent died on October 1, 2001, of complications from mesothelioma, an asbestos-related lung disease. At trial, decedent's video-recorded deposition was played for the jury. He stated he began working as an apprentice plumber in 1952 and continued work as a

plumber-pipefitter until his retirement in 1990. During his career, decedent installed, repaired, and removed boilers manufactured by defendant. At least a portion of the boiler components contained asbestos. Decedent had never seen a warning label affixed to defendant's products concerning the dangers of asbestos. Decedent did not know of the dangers of asbestos.

Decedent's son began work with his father in approximately 1972. They installed, repaired, and removed approximately 20 to 25 boilers manufactured by defendant.

On March 3, 1988, decedent filed a lawsuit claiming he developed asbestosis as a result of his exposure to asbestos-containing products. Decedent did not name defendant in the lawsuit.

Dr. James Hensold, decedent's primary-care physician, diagnosed decedent with mesothelioma in July 2001. Decedent died on October 1, 2001.

Dr. Eugene Marks, plaintiff's expert pathologist, testified that all forms of asbestos cause mesothelioma. Further, there is no way to determine which of many asbestos exposures decedent suffered during his career caused decedent to develop mesothelioma. Dr. Marks stated mesothelioma has a latency period of 20 to 40 years. Further, the more asbestos a person is exposed to the greater the risk of developing mesothelioma. Dr. Marks opined that decedent's exposure to defendant's asbestos-containing products was a substantial cause of decedent developing mesothelioma and his resulting death. Dr. Marks identified asbestosis as a separate and distinct disease from mesothelioma.

Dr. Richard Lemen, plaintiff's expert epidemiologist, also testified that all forms of asbestos can cause mesothelioma. Dr. Lemen stated that the more asbestos a person is exposed to the greater the risk of developing a related disease.

Frederick Boelter, an industrial hygienist and engineer, testified for defendant. Boelter conducted multiple tests on four of defendant's boilers, a single unit built in approximately 1952 and three units built after the Occupational Safety and Health Administration (OSHA) advised defendant of the dangers of asbestos. Boelter opined that the exposure levels of defendant's asbestos-containing products were not significant and did not cause related disease.

Dr. Robert Sawyer, a consultant in occupational and preventive medicine, testified for defendant. Although Dr. Sawyer also testified that the more asbestos a person is exposed to the greater the risk of developing a related disease, he believed there is a threshold of exposure that may be absorbed before there is any measurable effect or risk. Dr. Sawyer acknowledged numerous studies indicating a relationship between increased exposure and increased risk of disease. Conversely, there is no epidemiological evidence that exposures below current permissible exposure limits posed any risk of developing mesothelioma.

Dr. Sawyer did not believe that all forms of asbestos cause mesothelioma. Dr. Sawyer referenced various studies finding no significant risk of postprocessing chrysotile asbestos causing mesothelioma. However, on cross-examination, Dr. Sawyer acknowledged he was not certain that the fiber type used in defendant's asbestos-containing products was chrysotile asbestos. Further, Dr. Sawyer admitted many government agencies have found chrysotile asbestos can cause mesothelioma; no government agency has found chrysotile asbestos does not cause mesothelioma. Dr. Sawyer agreed decedent died of complications from mesothelioma and it was occupationally related.

At the close of testimony, the trial court stated:

"The last item of evidence for the defendant, I believe, is an item of judicial notice that I'm going to read to you. You should accept this as evidence just as if it were testimony that were [sic] presented in open court.

The court takes judicial notice of the following:

[Decedent] filed a lawsuit on March 3, 1988, claiming that he developing [sic] asbestos-related pleural disease and pleural calcification as a result of exposure to asbestos-containing products. [Defendant] was not a named defendant in that lawsuit."

The jury returned a verdict for plaintiff, awarding her $2,368,000 in damages on which the trial court entered judgment. Defendant filed a timely posttrial motion, which the court denied. This

appeal followed.

Defendant first argues that the trial court erred by excluding evidence of decedent's other exposures to asbestos. The court barred such evidence, relying on <u>Spain v. Owens Corning Fiberglass Corp.</u>, 304 Ill. App. 3d 356, 710 N.E.2d 528 (1999), <u>Kochan v. Owens-Corning Fiberglass Corp.</u>, 242 Ill. App. 3d 781, 610 N.E.2d 683 (1993), and <u>Lipke v. Celotex Corp.</u>, 153 Ill. App. 3d 498, 505 N.E.2d 1213 (1987). We review this issue <u>de</u> <u>novo</u>. <u>Spain</u>, 304 Ill. App. 3d at 363, 710 N.E.2d at 534.

In <u>Spain</u>, Shirley Spain, as administratrix of her deceased husband's estate, filed suit against several asbestos manufacturers, including the Owens-Corning Fiberglass Corporation, alleging that the manufacturers were responsible for her husband's asbestos-exposure injuries and resulting death. Prior to trial, all defendants with the exception of Owens-Corning settled or were dismissed. <u>Spain</u>, 304 Ill. App. 3d at 358, 710 N.E.2d at 531.

Owens-Corning then moved <u>in</u> <u>limine</u> to be allowed to present decedent's videotaped deposition testimony concerning decedent's multiple asbestos exposures unrelated to Owens-Corning. The <u>Spain</u> court refused to admit this evidence pursuant to <u>Lipke</u>, another asbestos-related decision. In <u>Lipke</u>, the appellate court held a party "'guilty of negligence cannot avoid responsibility merely because another person is guilty of negligence contributing to the same injury.'" <u>Lipke</u>, 153 Ill. App. 3d at 509, 505 N.E.2d at 1221, quoting <u>Sears v. Kois Brothers Equipment, Inc.</u>, 110 Ill. App. 3d 884, 889, 443 N.E.2d 214, 219 (1982). The <u>Lipke</u> court concluded that "the fact that plaintiff used a variety of asbestos products does not relieve defendant of liability for his injuries. Evidence of such exposure is not relevant." <u>Lipke</u>, 153 Ill. App. 3d at 509, 505 N.E.2d at 1221. The <u>Spain</u> court thus excluded evidence of decedent's other asbestos exposures (<u>Spain</u>, 304 Ill. App. 3d at 365, 710 N.E.2d at 535), and this court upheld the trial court's ruling (<u>Spain</u>, 304 Ill. App. 3d at 364-65, 710 N.E.2d at 534-35).

In contrast, an entirely different set of circumstances shaped our supreme court's decision in <u>Leonardi v. Loyola University of Chicago</u>, 168 Ill. 2d 83, 658 N.E.2d 450 (1995). In <u>Leonardi</u>,

plaintiffs, as administrators of decedent's estate, brought a medical-malpractice action against several defendants, seeking damages stemming from an improperly performed cesarean- section procedure. Prior to trial, decedent's attending physician (a named defendant in the malpractice suit) died and his estate settled. The plaintiffs then moved in limine to bar evidence relating to the alleged negligence of any person other than the remaining named defendants. The court denied the motion and allowed evidence relating to the deceased attending physician's standard of care. Leonardi, 168 Ill. 2d at 90-92, 658 N.E.2d at 454-55. The appellate court upheld the court's ruling. Leonardi v. Loyola University of Chicago, 262 Ill. App. 3d 411, 415-16, 633 N.E.2d 809, 812 (1993).

On appeal to the Illinois Supreme Court, the plaintiffs argued that the trial and appellate courts erred in denying their motion in limine predicated on the "common[-]law principle that there can be more than one proximate cause of an injury, and that a person is liable for his or her negligent conduct whether it contributed wholly or partly to the plaintiff's injury as long as it was one of the proximate causes of the injury." (Emphasis in original.) Leonardi, 168 Ill. 2d at 92-93, 658 N.E.2d at 455.

The Leonardi court held that the plaintiffs' reliance on this principle was misplaced, as it "presumes that a defendant's conduct is at least a proximate cause of the plaintiff's injury." (Emphasis in original.) Leonardi, 168 Ill. 2d at 93, 658 N.E.2d at 455. "In the present case, defendants denied that they were even partly a proximate cause of plaintiffs' injuries. Rather, the defense theory was that [decedent's deceased attending physician] was the sole proximate cause of [decedent's] injuries." Leonardi, 168 Ill. 2d at 93, 658 N.E.2d at 455. The court concluded that "'an answer which denies that an injury was the result of or caused by the defendant's conduct is sufficient to permit the defendant in support of his position to present evidence that the injury was the result of another cause.'" Leonardi, 168 Ill. 2d at 94, 658 N.E.2d at 455, quoting Simpson v. Johnson, 45 Ill. App. 3d 789, 795, 360 N.E.2d 144, 148 (1977).

The Spain court clearly recognized the difference between the case before it and the situation presented in Leonardi, noting:

"The Leonardi court found the Lipke standard inapplicable to medical[-]malpractice cases, but did not change the law governing asbestos cases. Because asbestos-related diseases cannot be linked to one fiber or a particular defendant, Illinois courts have long recognized the difficulty in determining whether a specific asbestos exposure caused or contributed to a person's asbestos-induced injury or death. Thus, to assist plaintiffs in proving proximate cause, the supreme court adopted the 'frequency, regularity and proximity,' or 'de minimis,' test in Thacker [v. UNR Industries, Inc., 151 Ill. 2d 343, 359, 603 N.E.2d 449, 457 (1992)]." Spain, 304 Ill. App. 3d at 364-65, 710 N.E.2d at 535, citing Kochan, 242 Ill. App. 3d at 790, 610 N.E.2d at 688-89.

The case before us indisputably involves asbestos exposure rather than medical malpractice.

Once a plaintiff satisfies the Thacker test, a defendant is presumed to be a proximate cause of a decedent's asbestos injury. See Thacker, 151 Ill. 2d at 360, 603 N.E.2d at 457. Illinois law then requires the trier of fact to independently evaluate whether the exposure was a substantial factor in causing decedent's injury, thereby making evidence of other asbestos exposures irrelevant. Defendant can rebut the presumption by proving (1) decedent was not exposed to its product, (2) his exposure was insufficient to cause injury, or (3) its product contained too low an amount of asbestos to be hazardous. Spain, 304 Ill. App. 3d at 365, 710 N.E.2d at 535.

In this case, plaintiff presented evidence that decedent was exposed to defendant's asbestos-containing products and the exposure was a substantial factor in causing decedent's injuries and resulting death. Defendant presented evidence that decedent's exposure was insufficient to cause injury and, further, defendant's products contained too low an amount of asbestos to be hazardous. It was for the jury to assess the credibility of this testimony, weigh the evidence, and resolve any conflicts. See Durbin v. St. Louis Slag Products Co., 206 Ill. App. 3d 340, 356, 564 N.E.2d 242, 253 (1990). The issue in this case is not whether there should be a presumption of causation if a plaintiff merely shows a decedent was exposed to defendant's

asbestos-containing products, but whether a reasonable jury could accept expert testimony that any exposure was a proximate cause of decedent's injuries and resulting death. Based on our review of the evidence presented at trial, a reasonable jury could find decedent was exposed to defendant's asbestos-containing products and, according to expert testimony, the exposure was a substantial factor in causing decedent's injuries and resulting death.

Defendant similarly argues the trial court erred by refusing to admit discovery documents from the lawsuit decedent filed in 1988 as evidence of decedent's other exposures to asbestos. In the earlier lawsuit, decedent claimed he developed asbestosis as a result of his exposure to asbestos-containing products. Decedent did not name defendant in the lawsuit. Defendant sought to introduce discovery documents presented in the earlier case as evidence of decedent's other exposures to asbestos. The court refused to admit the discovery documents, finding nothing in decedent's video-recorded deposition in the instant case inconsistent with the discovery documents presented in the earlier lawsuit and, further, "no admissions either expressly or tacitly." The court stated:

> "Here, [d]efendant sought to create the inference that the failure of decedent to list them in the 1988 lawsuit either impeached his credibility or constituted an admission by tacit omission. There was nothing about the questions or decedent's responses which would have permitted that inference."

We agree. The court did not err by refusing to admit the discovery documents from the earlier lawsuit as evidence of decedent's other exposures to asbestos.

Defendant next argues that the trial court erred by refusing to give a contributory-negligence instruction offered by defendant.

> "Contributory negligence is defined as a lack of due care for one's own safety as measured by an objective reasonable[-]person standard. [Citation.] The test of such negligence is not the frequency with which the act has been safely completed by others, but whether plaintiff, at the time of the occurrence, used that

degree of care which an ordinarily careful person would have used for his or her own safety under like circumstances. [Citation.] Ordinarily, it is the jury's responsibility to consider whether plaintiff's actions amounted to contributory negligence [citation]; the question of contributory negligence is one of fact for the jury. [Citation.] Instructions regarding plaintiff's contributory negligence are not proper where there is no testimony or other evidence from which a finding of contributory negligence might be made. [Citation.] 'The degree of evidence sufficient to establish contributory negligence must be determined from the facts of each case.' [Citation.] Each party has the right to have the jury clearly and fairly instructed upon each theory supported by the evidence. [Citation.] Whether to give a jury instruction is within the discretion of the circuit court, and a new trial is granted where there has been a substantial deprivation of the right to a fair trial." McCarthy v. Kunicki, 355 Ill. App. 3d 957, 972-73, 823 N.E.2d 1088, 1101 (2005).

In the present case, decedent testified that he worked as a plumber-pipefitter for more than 38 years, beginning in approximately 1952. During his career, decedent installed, repaired, and removed boilers manufactured by defendant. At least a portion of the boiler components contained asbestos. Decedent had never seen a warning label affixed to defendant's products concerning the dangers of asbestos. Decedent did not know of the dangers of asbestos.

Defendant testified it did not know of the dangers of asbestos until approximately 1974 and, therefore, did not place warnings on its products. The trial court noted decedent "would have worked on or around [d]efendant's boilers for 22 years before even [defendant] was aware of any hazard." Although defendant testified it began affixing warnings on its products in approximately 1974, defendant did not produce "direct evidence" of this initiative. The court found insufficient evidence from which a finding of contributory negligence might be made. The court did not abuse its discretion by refusing to give a contributory-negligence instruction offered by defendant.

Defendant next argues that remarks made by plaintiff's counsel during closing argument

were so prejudicial as to require a new trial.  We disagree.

"Improper argument may be a basis for reversal if the argument was of such a character as to have prevented the party from receiving a fair trial."  Myers v. Heritage Enterprises, Inc., 354 Ill. App. 3d 241, 249-50, 820 N.E.2d 604, 612 (2004).  "Whether a party has been denied his right to a fair trial requires a consideration of the entire trial, and the trial court, having been in a unique position to make that determination, is afforded great discretion."  Myers, 354 Ill. App. 3d at 250, 820 N.E.2d at 612.  We review the trial court's determination for an abuse of discretion.  Myers, 354 Ill. App. 3d at 250, 820 N.E.2d at 612.

In approximately 1974, OSHA cited defendant for exceeding allowable levels of asbestos in the workplace.  Over defendant's objection, the trial court allowed use of the citation to establish notice of the hazards of asbestos to defendant.  During closing argument, plaintiff's counsel argued: (1) "OSHA came in to tell them that they were killing their own workers," and (2) "OSHA came out *** and showed them they were out of control."  The court characterized the argument as "hyperbole," stating that "it would be difficult to imagine that the comments *** were sufficient to change the minds of jurors, or even substantially affect their decision-making."

During rebuttal, although the trial court had properly excluded evidence of decedent's other exposures to asbestos, plaintiff's counsel argued that defendant failed to produce evidence of a "mystery guy."  The court brought the rebuttal to an immediate close.

Defendant did not object to the argument during trial.  "[A] 'party cannot sit on his hands and let perceived errors into the record and complain of those errors for the first time in a post[]trial motion.'"  Taluzek v. Illinois Central Gulf R.R. Co., 255 Ill. App. 3d 72, 82, 626 N.E.2d 1367, 1375 (1993), quoting Pharr v. Chicago Transit Authority, 220 Ill. App. 3d 509, 515, 581 N.E.2d 162, 166 (1991).  Failure to object to alleged errors in an opponent's argument is considered waiver of the objection.  Taluzek, 255 Ill. App. 3d at 82, 626 N.E.2d at 1375.

Moreover, our review of these remarks reveals nothing so prejudicial as to deprive defendant of a fair trial.  Therefore, defendant waived its objection to plaintiff's counsel's comments

during closing argument and rebuttal.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH, J., concurs.

STEIGMANN, J., dissents.

JUSTICE STEIGMANN, dissenting:

This is a difficult and important case to which my colleagues and I have given a lot of thought. For the reasons that follow, I conclude we should not affirm the trial court's judgment. Accordingly, I respectfully dissent.

The supreme court in Thacker adopted the "frequency, regularity, and proximity test" to assist plaintiffs in proving proximate cause in fiber-drift asbestos cases. However, the supreme court has never held that the rules that generally govern negligence cases do not apply in appropriate asbestos cases. This case is one of those appropriate cases, and defendant should have been permitted to present the sole-proximate-cause defense. Because the trial court's rulings barred defendant from doing so, this court should reverse and remand for a new trial.

I. THE SOLE-PROXIMATE-CAUSE DEFENSE

In Ward v. K Mart Corp., 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226 (1990), the supreme court wrote that "[t]he essential elements of a cause of action based on common[-]law negligence may be stated briefly as follows: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." In Leonardi, the supreme court further explained the proximate-cause requirement as follows:

"In any negligence action, the plaintiff bears the burden of proving not only duty and breach of duty, but also that defendant proximately caused plaintiff's injury.

˘ 10 ˘

[Citations.] The element of proximate cause is an element of the plaintiff's case. ***

Obviously, if there is evidence that negates causation, a defendant should show it. However, in granting the defendant the privilege of going forward, also called the burden of production, the law in no way shifts to the defendant the burden of proof. [Citations.]

* * *

*** [P]laintiffs argue that the sole proximate cause defense distracts a jury's attention from the simple issue of whether a named defendant caused, wholly or partly, a plaintiff's injury. We disagree. The sole proximate cause defense merely focuses the attention of a properly instructed jury *** on the plaintiff's duty to prove that the defendant's conduct was a proximate cause of plaintiff's injury." (Emphasis in original.) Leonardi, 168 Ill. 2d at 93-94, 658 N.E.2d at 455-56.

II. USE OF THE SOLE-PROXIMATE-CAUSE DEFENSE IN THIS CASE

Because Leonardi did not limit the applicability of the sole-proximate-cause defense, it should be available in appropriate asbestos cases. I use that phrase "appropriate asbestos cases" advisedly because I recognize that both Spain and Kochan could be viewed as prohibiting a defendant in an asbestos-fiber-drift case from raising a sole-proximate-cause defense. However, this case is not a fiber-drift case, which can be viewed as sui generis. Thus, in deciding the issues this case presents, this court need not and should not definitively resolve how, if at all, the sole-proximate-cause defense can be used in a fiber-drift case.

In cases like this one, where undisputed evidence exists of direct contact between the decedent and a defendant's asbestos-containing product, the defendant should be able to negate causation by showing that (1) the decedent's exposure to other asbestos-containing products or fibers was extensive and (2) his exposure to the defendant's product could be viewed by the trier of fact as negligible or insignificant, particularly when compared to his extensive exposure to the other asbestos-containing products. Under such circumstances, the trier of fact should be permitted to

˅ 11 ˅

decide whether the decedent's exposure to the other asbestos-containing products constitutes the sole proximate cause of decedent's injury.

Support for this principle can be found in section 431 of the Restatement (Second) of Torts and Comments a and b thereto, which provide as follows:

"What Constitutes Legal Cause

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

Comment:

a. Distinction between substantial cause and cause in the philosophic sense. In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. Except as stated in §432(2), this is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called 'philosophic sense,' yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

b. In many cases the question before the court is whether

the actor's negligence was in fact the cause of the other's harm--that is, whether it had any effect in producing it--or whether it was the result of some other cause, the testimony making it clear that it must be one or the other, and that the harm is not due to the combined effects of both. In such a case, the question, whether the defendant's negligence has a substantial as distinguished from a merely negligible effect in bringing about the plaintiff's harm, does not arise if the testimony clearly proves that the harm is from a cause other than the actor's negligence. Indeed, the testimony often makes it clear that, if the defendant's conduct had any effect, the effect was substantial. It is only where the evidence permits a reasonable finding that the defendant's conduct had some effect that the question whether the effect was substantial rather than negligible becomes important." (Emphases added.) Restatement (Second) of Torts §431, Comments a, b, at 428-29 (1965).

Section 431 and Comments a and b recognize the possibility that a case may arise in which the defendant's conduct may have had some effect in causing the plaintiff's harm, but when viewed in the totality of all the evidence in the case, a reasonable trier of fact could find that the effect of defendant's conduct was "negligible" or "insignificant." This is the standard that the trial court should have applied to the circumstances in this case.

### III. HYPOTHETICAL QUESTIONS

The problem with the majority's resolution of this case becomes apparent when two hypothetical questions I asked at oral argument are considered. In the first, all of the evidence is the same as that presented (or offered to be presented) in this case, except that the record also shows beyond any doubt that the injured plaintiff worked only once in his life on an asbestos-containing product of the defendant. I asked plaintiff's counsel if this one change in the facts from

the present case would be sufficient to permit the defendant in this hypothetical to introduce evidence of deceased plaintiff's other exposures to asbestos products. He responded no.

In the second hypothetical, the facts are again the same as in this case except that the injured plaintiff was not someone who worked on a boiler containing asbestos but instead was a janitor in a school where a boiler manufactured by defendant was installed in the basement. Assume the record shows beyond any doubt that the janitor's only exposure to defendant's asbestos-containing product occurred when she was in the janitor's office in the basement at various times during a single day on which the boiler was being repaired. Assume further that (1) the janitor was married for 30 years to a man who worked during the entire course of their marriage in a plant like the one in Thacker, where raw asbestos and asbestos fibers were constantly present in the air, and (2) according to expert testimony in an offer of proof, asbestos fibers would have been present on the husband's clothing that he wore home from work. I asked plaintiff's counsel whether under these circumstances defendant would be permitted to introduce evidence of these other exposures to asbestos to account for deceased plaintiff's mesothelioma when, years later, she sues this defendant. His answer was again no.

In my opinion, counsel's responses that even in these extreme cases, defendant would still not be permitted to introduce evidence of other exposures to asbestos is entirely consistent with the majority's decision in this case and one further indication why that decision is wrong.

These hypothetical questions could, of course, continue, with the next one involving contacts even more remote than the last with regard to the issue of the plaintiff's exposure to any asbestos as a result of defendant's conduct. Examples would be (1) teachers or students on the upper floors of the same school; (2) workers in the school cafeteria; (3) occasional visitors to the school, like parents, three weeks after the boiler repair; or (4) a postal worker or other delivery person who had occasion to be at the school office on a few occasions after the boiler repair. Perhaps further examples could even include the people who resided across the street from the school.

Barring a sole-proximate-cause defense in either of the above hypothetical questions, or in cases where the injured plaintiff's contact with the defendant's asbestos product is even more remote, defies logic and common sense. Yet, I have trouble finding a principled basis upon which I could conclude that such evidence should be barred in this case (as the majority holds) but not barred in any of these hypotheticals.

## IV. THE RULE IN OTHER JURISDICTIONS

To help this court understand the issues before it, we have had the benefit of several amici briefs. One of those amici writes the following in support of defendant's position in this case:

"[T]he Lipke [r]ule exists only in Illinois. In virtually all courts of which we are aware, juries routinely resolve issues of proximate cause in asbestos cases after hearing all the evidence of a plaintiff's exposure history. We are unaware of any reported cases outside of Illinois excluding such evidence on the ground that it would confuse the jury." (Emphasis in original.)

The amici brief then lists several decisions from jurisdictions throughout the nation that have concluded that evidence of a plaintiff's other asbestos exposures was admissible even though the facts of those cases were not as favorable to the defendant as were the facts in this case.

One such case is AC&S, Inc. v. Asner, 344 Md. 155, 176-77, 686 A.2d 250, 260-61 (1996), in which the Maryland Court of Appeals (the highest court of that state) wrote the following in a case factually similar to this one:

"A factual defense may be based on the negligible effect of a claimant's exposure to the defendant's product, or on the negligible effect of the asbestos content of a defendant's product, or both. In such a case the degree of exposure to a non[]party's product and the extent of the asbestos content of the non[]party's product may be relevant to demonstrating the non[]substantial nature of the exposure to, or the asbestos content of, the defendant's product. But, a defendant would not ordinarily generate a jury issue on lack of substantial factor causation only

by showing the dangerousness of a non[]party's product to which the claimant was exposed.  Ordinarily a defendant would have to follow up the evidence of exposure to the products of non[]parties with evidence tending to prove that the defendant's product was not unreasonably dangerous or was not a substantial causal factor. Under these circumstances the proposition that the defendant's product is not a substantial cause may be made more probable by evidence tending to prove that the claimant's disease was caused by the products of one or more non[]parties.  See e.g., Becker v. Baron Bros., 138 N.J. 145, 649 A.2d 613 (1994) (whether processed chrysotile in brake products posed a risk of causing mesothelioma in users was a sharply disputed issue of fact at trial, so that trial court erred in instructing as a matter of law that the products were defective without a warning)."

Such evidence was presented to the trial court in this case, including "evidence tending to prove that the claimant's disease was caused by the products of one or more non[]parties."  As in Becker, cited above, defendant contends that it presented "substantial evidence that: (i) its boilers contained chrysotile asbestos, and not amphibole asbestos; and (ii) recent scientific studies have concluded that, unlike amphibole asbestos, chrysotile asbestos does not cause mesothelioma.  *** Even plaintiff's own experts acknowledge that there is an ongoing scientific debate as to whether chrysotile asbestos is capable of causing mesothelioma."

Defendants also argue as follows:

"[E]ven putting aside the type of asbestos contained in [defendant's] boilers, the low dose of asbestos that [decedent] received from his exposure to [defendant's] boilers was not large enough to cause mesothelioma. [Decedent] allegedly worked on 20-25 [of defendant's] boilers over his 30-year career. *** The testing performed on [defendant's] boilers showed that the possible lifetime asbestos dose to a person who installed 600 boilers over a 30-year period is many times lower than the 'life time dose that we have just walking around breathing asbestos that is in the air.'  ***

Moreover, even plaintiff's experts testified that the dose delivered by chrysotile asbestos is lower than the dose delivered by amphibole asbestos."

In Warner/Elektra/Atlantic Corp. v. County of DuPage, No. 83C8230, slip op. at ____(N.D. Ill. March. 6, 1991) (1991 WL 32776, at *3), then-federal district Judge Ilana Diamond Rovner wrote the following (in a nonasbestos context) about how excluding evidence of alternative causes of a decedent's injuries leaves the sole defendant in an untenable position:

"Plaintiffs concede that they bear the burden of demonstrating that [defendant's] negligence was a proximate cause of their injury, and that [defendant] may counter with evidence that its conduct was not a proximate cause of any injury to plaintiffs. But plaintiffs would have the issue of proximate cause tried in a vacuum, with no reference to the other actors whose conduct may also have been a proximate cause of plaintiffs' injury. In the trial scenario plaintiffs propose, [defendant] could argue to the jury that it was not responsible for the [events] which injured plaintiffs, but could not suggest who was responsible. Thus, the jury's natural question--'If not you, who?'--would be left unanswered. That result would be untenable."

I agree with Judge Rovner's analysis.

I earlier referred to defendant's contention that only in Illinois would evidence of the other asbestos exposures in this case be precluded. Neither plaintiff nor any of the amici in support of plaintiff have disputed that contention, which I would expect them to do if it were not correct. Accepting it as true, I find it troubling. Although Illinois is entirely free to establish its own rule of procedure and evidence to apply in Illinois courts, encountering a rule that exists only in Illinois that precludes seemingly important evidence with major consequences for a certain category of defendants should--at a minimum--give us Illinois judges reason to pause and reflect. Having done so, I am now convinced that our singular Illinois rule is no longer justified (assuming it ever was), and I now believe that Illinois should follow our sister states and not preclude this evidence.

## V. CONCLUSION

The trial court made clear in its extraordinarily thoughtful and scholarly memo denying defendant's posttrial motion that it was quite unhappy doing so. Yet, given the current state of Illinois law, the court felt itself bound to follow those decisions of the appellate court on point even if the trial court believed them to be erroneous. In this regard, the trial court was correct. However, we are free to disregard erroneous decisions of the appellate court or to distinguish them, as the case may be. Citing section 431 of the Restatement, I conclude we can--and should--distinguish this case from Lipke, Spain, and Kochan. We should reverse and remand for a new trial at which the trial court would be permitted to exercise its discretion regarding whether, consistent with section 431 of the Restatement, defendant should be permitted to pursue its sole-proximate-cause defense by presenting the jury with evidence of the decedent's other asbestos exposures.