(No. 103137.—

SALLY NOLAN, as Executrix of the Estate of Clarence Nolan, Appellee, v. WEIL-McLAIN, Appellant.

*Opinion filed April 16, 2009.—Rehearing denied June 11, 2009.*

Richard C. Godfrey, Scott W. Fowkes, Mark J. Nomellini and Jennifer M. Rhodes, of Kirkland & Ellis, LLP, and Edward J. McCambridge, Paul E. Wojcicki and Cameron D. Turner, of Segal, McCambridge, Singer & Mahoney, all of Chicago, for appellant.

Michael P. Cascino, of Cascino Vaughan Law Offices, Ltd., and David A. Novoselsky and Leslie J. Rosen, all of Chicago, for appellee.

Victor E. Schwartz, Mark A. Behrens, Wendy L. Williams and Christopher E. Appel, of Shook, Hardy & Bacon, L.L.P., of Washington, D.C., for *amici curiae* Illinois Manufacturers' Association *et al.*

Steven P. Sanders and Lisa A. Larkin, of Williams, Venker & Sanders LLC, of St. Louis, Missouri (David B. Siegel, Clifton S. Elgarten and Paul W. Kalish, of Crowell & Moring LLP, of Washington, D.C., of counsel), for *amicus curiae* Caterpillar Inc.

Herbert L. Zarov, Richard F. Bulger and Craig A. Woods, of Mayer, Brown, Rowe & Maw LLP, of Chicago, for *amici curiae* Chamber of Commerce of the United States of America *et al.*

John D. Wendler, Noel L. Smith, Carolyn M. Husmann, Elizabeth A. Hunot, Alex Belotserkovsky and Kathryn P. Morgan, of Helper, Broom, MacDonald, Hebrank, True & Noce, LLC, of Edwardsville, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Robert H. Riley and Joshua D. Lee, of Schiff Hardin LLP, of Chicago, for *amicus curiae* Owens-Illinois, Inc.

Kathy Byrne, of Cooney and Conway, of Chicago, for *amici curiae* Illinois Trial Lawyers Association and the Illinois AFL-CIO.

Janice Pennington and Edmond L. Martin, of Baron & Budd, P.C., of Dallas, Texas, for *amici curiae* Plumbers and Pipefitters Local 551 and Laborers Local 100.

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Garman, Karmeier, and Burke concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion.

Justice Thomas took no part in the decision.

## OPINION

Plaintiff, Sally Nolan, as executrix of the estate of her late husband, Clarence Nolan (decedent), sought recovery in the circuit court of Vermilion County against defendant, Weil-McLain, for the wrongful death of her husband. The jury returned a verdict for plaintiff, and a majority of the appellate court affirmed. 365 Ill. App. 3d 963. For the reasons that follow, we reverse the judgment of the appellate court and remand this cause to the circuit court for a new trial.

## BACKGROUND

Because of our ultimate disposition of this appeal, it is unnecessary for us to set forth the facts in detail.[1] We recite only those relevant to the issue presented.

### A. Pretrial Proceedings

In 2001, Clarence and Sally Nolan filed their original complaint against 12 corporations—including defendant Weil-McLain—alleging that Clarence developed mesothelioma[2] after being negligently exposed to the defendants' asbestos-containing products. Specifically, as to Weil-McLain, it was alleged that Clarence was exposed to asbestos when he installed, repaired or removed boilers manufactured by the company. Because Clarence died prior to trial, Sally, as the executrix of his estate, was substituted as plaintiff.

The 11 other defendants either settled or were dismissed prior to trial, leaving Weil-McLain as the lone defendant in plaintiff's suit. In its motion *in limine*, defendant sought to present evidence that the sole proximate cause of decedent's death was his exposure to asbestos-containing products of nonparty entities. Relying upon *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 355 (1992), defendant maintained that "it is possible to exclude certain exposures as substantial contributing causes of a plaintiff's injury," and that once a plaintiff satisfies *Thacker*'s "frequency, regularity and proximity" test, proximate causation is a question for the jury to determine based upon competent and complete

---

[1] A full recitation of the facts and procedural history are set forth in the circuit court's memorandum "Order on Posttrial Motions" entered on March 21, 2005, which may be found at 2005 WL 724041.

[2] Mesothelioma is a tumor arising from the cells which line the inner surface of the peritoneum, pericardium or pleura. 4 J. Schmidt, Attorney's Dictionary of Medicine and Word Finder M-154 (2007).

evidence. Defendant also relied upon *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83 (1995), to argue that it may present evidence that a nonparty was the sole proximate cause of the alleged injuries.

Plaintiff thereafter filed a motion *in limine* seeking to bar all evidence of decedent's exposure to asbestos products of nonparties as irrelevant under *Lipke v. Celotex Corp.*, 153 Ill. App. 3d 498, 509 (1987). Plaintiff, relying on *Kochan v. Owens-Corning Fiberglass Corp.*, 242 Ill. App. 3d 781, 790 (1993), also argued that other-exposure evidence would confuse the jury and was highly prejudicial. Plaintiff contended that it was impossible to determine the specific fiber or asbestos exposure that caused decedent's mesothelioma, and, at best, defendant could show only concurrent causation of decedent's injury. Plaintiff also maintained that other-exposure evidence was not necessary for defendant to establish its defense that the amount of asbestos decedent inhaled while working with its products could not have caused his mesothelioma.

Defendant countered that *Lipke*, *Kochan* and the related case of *Spain v. Owens Corning Fiberglass Corp.*, 304 Ill. App. 3d 356 (1999), had been overruled by this court's decision in *Leonardi*, and, in any event, were factually distinguishable. Further, because it was the sole defendant, a jury would not accept a low-dose defense without evidence of other asbestos exposures, and that if the evidence showed that its products were decedent's only exposure, a jury could find that its products caused his mesothelioma. Defendant also asked that evidence of decedent's 1988 lawsuit for a different asbestos-related disease, asbestosis,[3] be presented to the jury, as defendant

---

[3]Asbestosis is a lung disease caused by the prolonged inhalation of asbestos dust. 1 J. Schmidt, Attorney's Dictionary of Medicine and Word Finder A-552 (2007).

was not named in that case as a source of his asbestos exposure.

The circuit court prefaced its ruling on the motions by stating, "to me, there's a certain unfairness *** I think under the fact situation in this case defendant should be allowed to introduce the other sources." However, "following the law as I read the law as it exists today," the court granted plaintiff's motion *in limine*, and barred defendant from introducing evidence of decedent's other asbestos exposures. Although the court allowed evidence that decedent's earlier lawsuit had identified parties other than defendant as his only sources of asbestos exposure, they could not be named.

## B. Trial Proceedings

In January 2004, plaintiff's case proceeded to trial against defendant. There was no factual dispute that the cause of decedent's death was mesothelioma or that for a period of time prior to 1974 various asbestos-containing components were supplied with defendant's boilers, including cement and rope manufactured by other entities. The dispute revolved around the extent of decedent's exposure to defendant's boilers, as well as the type of asbestos-containing components which may have been supplied with them.

The jury heard decedent's testimony via a videotaped evidence deposition. He began his career in 1952, and, over the next 38 years, performed millwright work, plumbing, pipefitting and boiler installation and repair. Decedent estimated he worked on defendant's boilers "20, 25" times, routinely using the asbestos rope provided by defendant between the boiler sections, which produced dust when cut. Other times, he used asbestos cement supplied by defendant to seal gaps between boiler sections, and mixing this cement produced dust. Dust was also created when he cleaned up after a boiler installation. Decedent stated he never saw an asbestos warn-

ing on defendant's boilers or any other product, including pipe-covering.

After the video presentation concluded, defendant argued that decedent opened the door to evidence of other exposures by stating he had never seen warnings on *any* asbestos products. The circuit court disagreed, noting that it was "one response" to one question, and that, based upon decedent's testimony, "any intelligent jury [would have] already figured out [decedent had] been exposed to all kinds of asbestos and all kinds of circumstances." In an offer of proof, defendant presented the unedited transcript of decedent's full evidence deposition, including testimony that he had been exposed to numerous asbestos-containing products neither made nor supplied by defendant, including instances working at Lauhoff Grain, when asbestos dust "rained down" on him from insulation and he "certainly" inhaled it.

Decedent's son, Randall Nolan, testified that in 1972 he began to work with his father, and echoed that they installed and repaired defendant's boilers "20, 25 times," using the asbestos-containing dry cement and rope supplied by defendant, which created dust when mixed or cut. If one section of the boiler was broken, the entire unit had to be torn down and rebuilt, which also created dust. They also worked "a couple times" with air cell insulation on the boiler jackets, which sometimes crumbled off and released dust.

On cross-examination, Randall admitted that he and his father spent roughly 75% of their time performing pipefitting work at a Quaker Oats plant. Defendant made an offer of proof wherein Randall testified that while working at that and other sites, he and decedent removed pipe covering or insulation with a saw, inhaling large quantities of dust. They also worked in areas where insulation workers created dust while installing asbestos pipe covering.

Paul Schuelke, defendant's director of product compliance, testified that all sectional boilers customarily used asbestos products from the 1950s through the 1970s, and that prior to 1974, the assembly instructions for some of defendant's boilers specified the use of asbestos cement. Defendant also provided asbestos rope and asbestos air cell insulation with some of its boilers. Contrary to Randall Nolan's description, Schuelke stated that work on defendant's boilers did not require handling air cell insulation. Schuelke also stated that none of the workers employed by defendant involved in the daily manufacture of its boilers ever contracted mesothelioma, lung cancer, or any other asbestos-related cancer.

William Ewing, an industrial hygienist, testified as an expert for plaintiff. Ewing opined that by working on defendant's boilers, decedent had "significant exposure" to asbestos by using asbestos rope, mixing dry asbestos cement or tearing out air cell insulation.

During Ewing's cross-examination, defendant established that decedent had also performed pipefitting work during his career. Ewing stated that, as a result, decedent likely would have handled many asbestos-containing products, and would have experienced significant asbestos exposure.

Dr. Eugene Mark, a pathologist, also testified as an expert for plaintiff. According to Dr. Mark, "all forms of asbestos cause mesothelioma," and that no exposure to asbestos is safe, including exposure to chrysotile asbestos fibers, the type defendant claimed was used in its products. Dr. Mark found it impossible to determine which asbestos exposure during decedent's career was the sole or single cause of his mesothelioma, and opined that "each and every exposure to asbestos that [decedent] had was a substantial contributing factor in causing his malignant mesothelioma."

On cross-examination, Dr. Mark accepted the propositions that "on a fiber-by-fiber basis, chrysotile [was] the least carcinogenic" type of asbestos, and that "a greater dose of exposure to chrysotile [would be] required than required for amphibole asbestos exposure" to cause mesothelioma. Dr. Mark also agreed that some studies found no link between chrysotile asbestos exposure and mesothelioma. On redirect, however, Dr. Mark explained that pure chrysotile is rarely found in asbestos products, as it is often mixed with other fibers during the production process.

Defendant made an offer of proof wherein Dr. Mark agreed that pipe covering and insulation contained amphibole asbestos fibers and are considered "potential high-dose, high-exposure products" if handled improperly. He conceded that decedent experienced significant exposure to asbestos by working near insulators removing and installing pipe covering, making those exposures a "significant contributing factor" in decedent's mesothelioma.

Dr. Richard Lemen, an epidemiologist, also testified as an expert on plaintiff's behalf. Dr. Lemen stated that the majority of experts believe chrysotile asbestos causes mesothelioma.

On cross-examination, however, Dr. Lemen agreed that several studies have shown a link between mesothelioma and amphibole-type fibers in pipe covering, and that chrysotile fibers are less potent than other fiber types, although "because of its vast usage, [chrysotile] can certainly account for many cases of mesothelioma." He also agreed that there remains scientific debate over whether chrysotile can cause mesothelioma. On redirect, however, Dr. Lemen stated that it was "an academic question as to whether pure chrysotile causes mesothelioma" because studies showed that all commercial forms of asbestos have been contaminated with other fiber types.

Testifying as an expert for defendant, industrial hygienist Frederick Boelter opined that decedent's asbestos exposure from defendant's boilers was insignificant, as only between 2% and 5% of the total work time would be spent in contact with asbestos-containing components. Boelter performed studies in preparation for trial on four boilers manufactured by defendant which revealed that the airborne asbestos fibers generated were within regulatory limits, and the asbestos in the boiler components was pure chrysotile, with no contamination by other fibers. Based on these studies, Boelter opined that the asbestos exposure of someone who did not work with boilers would be higher than the exposure decedent would have received over 30 years of working with these boilers. Boelter concluded that working with or around asbestos components of defendant's boilers did not create a risk of asbestos-related disease.

On cross-examination, Boelter acknowledged that all but one of the boilers he tested was built after 1974. In addition, none contained air cell insulation and, to his knowledge, none involved the use of dry insulating cement.

Defendant also presented the expert testimony of Dr. Robert Sawyer, a consultant in occupational and preventive medicine, who, contrary to Dr. Lemen, believed that hazardous contaminants could be removed from chrysotile. Dr. Sawyer opined that the type of asbestos found in defendant's boilers was not hazardous at the level of decedent's exposure, and would only be dangerous after a thousand years of the daily average dosage. Dr. Sawyer also noted several studies indicating that pure chrysotile asbestos was not harmful. Although he believed decedent's condition was "occupationally related," Dr. Sawyer concluded that decedent's mesothelioma "could not have been caused by the asbestos component[s] of [defendant's] boiler on the basis of dose and fiber type."

During cross-examination, Dr. Sawyer admitted that he had a "pretty good idea" that only chrysotile was used in defendant's products, but was not completely certain. He also agreed that many asbestos experts believe that chrysotile can cause mesothelioma, and there is no governmental agency in the world that has concluded that chrysotile does not cause this disease.

Defendant then made an offer of proof, wherein Dr. Sawyer testified that he believed decedent was exposed to "pipe covering, thermal insulation, [and] adhesives, [but] primarily pipe covering" in his pipefitting work, and that his mesothelioma was caused by the amphibole fibers in those products.

At the close of the evidence, the circuit court read the following judicial notice statement to the jury: "Clarence Nolan filed a lawsuit on March 3rd, 1988, claiming that he developed asbestos-related pleural disease and pleural calcification as a result of exposure to asbestos-containing products. Weil-McLain was not a named defendant in that lawsuit." The circuit court then gave the jury, over plaintiff's objection, defendant's proffered sole proximate cause defense instruction, explaining that jurors could reasonably find that decedent's mesothelioma was not caused by asbestos exposure from defendant's products due to the dose and fiber type. Based on that finding, the jury could conclude that some other asbestos product was the sole proximate cause of decedent's disease.

The jury rendered a verdict in favor of plaintiff, awarding $2,368,000 in damages. This award was reduced by a $1,222,500 setoff for the amounts received from the defendants who had settled and been dismissed from the case.

## C. Posttrial Proceedings

Defendant filed a timely posttrial motion in which it argued, *inter alia*, that the circuit court erred in granting plaintiff's motion *in limine* to exclude all evidence of

decedent's other exposures to asbestos. In a 58-page written order, the trial court set forth in detail the evidence presented at trial, as well as the rationale for its trial rulings and its analysis of defendant's posttrial arguments. Although the court ultimately denied defendant's motion, it prefaced its ruling by noting that "the conflict for the court in this case has been between what the court considers the law *should* be, and the current state of the law in asbestos litigation." (Emphasis in original.) The court candidly acknowledged that it was denying defendant's motion "reluctantly," but was bound by the principle of *stare decisis* to do so.

### D. Appellate Proceedings

A majority of the appellate court affirmed. 365 Ill. App. 3d 963. The panel rejected defendant's argument that the lower court erred by excluding evidence of decedent's other exposures to asbestos, holding that "[o]nce a plaintiff satisfies the [frequency, regularity and proximity] *Thacker* test, a defendant is presumed to be a proximate cause of a decedent's asbestos injury." 365 Ill. App. 3d at 968. Although the trier of fact is required "to independently evaluate whether the exposure was a substantial factor in causing decedent's injury," the panel, relying upon *Lipke*, *Kochan* and *Spain*, held that evidence of other asbestos exposures is irrelevant in answering this question. 365 Ill. App. 3d at 966-68. The panel also found defendant's reliance upon this court's decision in *Leonardi* to argue that such evidence is properly admitted to support a sole proximate cause defense to be misplaced. Noting that *Leonardi* involved a medical malpractice action, the panel held it did not control the instant cause, which "indisputably involves asbestos exposure rather than medical malpractice." 365 Ill. App. 3d at 968. The panel concluded that it was reasonable for the jury to find that "decedent was exposed to defendant's asbestos-containing products,"

and that such exposure "was a substantial factor in causing decedent's injuries and resulting death." 365 Ill. App. 3d at 969.

The dissenting justice, believing it was error to bar the other-exposure evidence, would have reversed and remanded this cause for a new trial where defendant would be permitted to present the jury with evidence of decedent's other asbestos exposures in support of its sole proximate cause defense. 365 Ill. App. 3d at 977-78 (Steigmann, J., dissenting).

This court allowed defendant's petition for leave to appeal. 210 Ill. 2d R. 315. We also allowed the filing of several *amicus curiae* briefs in support of both plaintiff and defendant. 210 Ill. 2d R. 345.

## ANALYSIS

This appeal presents the question of whether the circuit court committed error by excluding all evidence of decedent's exposure to asbestos throughout his 38-year career from products other than those of defendant. Defendant contends that the circuit court's ruling improperly deprived it of its right to present evidence in support of its sole proximate cause defense, as it could not identify to the jury other asbestos exposures of sufficient dosage and fiber type as the sole proximate cause of decedent's injuries. Further, defendant maintains that the circuit court's ruling—based upon the appellate court's decision in *Lipke* and its progeny—directly conflicts with this court's decisions in *Thacker* and *Leonardi* by creating an "irrebutable presumption" of liability, as "the jury was not allowed to consider and weigh the evidence, and instead, the lower courts chose which side's evidence was to be admitted and believed." Defendant also notes the circuit court's candid admission that it denied its posttrial motion on this issue "reluctantly." Because defendant contends these trial errors were not harmless, it requests that we reverse the judg-

ment of the lower courts and remand this cause for a new trial, where evidence of all of decedent's exposures to asbestos may be admitted.

Plaintiff counters that, based upon the *Lipke* line of cases holding such evidence to be irrelevant, the circuit court properly excluded evidence of decedent's exposure to other asbestos-containing products. Plaintiff contends that asbestos cases are "completely unlike" other tort cases, in that "they call for different rules of proof," evinced by the "presumption" of causation established by this court in *Thacker*. To that end, plaintiff requests that we "recognize an exception to the rule set forth in *Leonardi*" for asbestos actions. Finally, plaintiff disputes defendant's assertion that any trial error was not harmless because despite the exclusion of other-exposure evidence, "[t]he jury [nevertheless] heard all the relevant evidence *** [and] clearly understood that [decedent] was exposed to asbestos from sources other than [defendant]." We disagree with plaintiff on all points.

Because the lower courts' exclusion of evidence of decedent's other exposures to asbestos was based upon their interpretation of existing case law, the question presented is one of law. Accordingly, our review is *de novo*. *In re A.H.*, 207 Ill. 2d 590, 593 (2003).

In light of the parties' arguments, our analysis in this case is necessarily three-fold. First, we must initially examine whether *Thacker* created the presumption of causation that plaintiff suggests. If *Thacker* did create such a presumption, then the circuit court's exclusion of other evidence was correct. If *Thacker* did not create such a presumption, however, we must then examine the separate question of the propriety of the circuit court's ruling excluding evidence of decedent's exposure to asbestos from nonparties. Finally, if the circuit court erred in excluding this evidence, we must determine if that error is harmless or reversible.

## A. The "Presumption" of Causation

In *Thacker*, the plaintiff brought suit against several defendants seeking damages for her husband's injuries and death from cancer, which she claimed he contracted while working with their asbestos-containing products. The jury found for plaintiff, and, on appeal, we considered whether the circuit court erred in denying a defense motion for judgment *n.o.v.* because the plaintiff failed to produce sufficient evidence of exposure to defendants' asbestos. *Thacker*, 151 Ill. 2d at 351-52. Defendants maintained that their products comprised a small amount of the decedent's total asbestos exposure relative to the large amount of exposure he experienced from other sources, and that the jury's verdict was unsupportable, as it was forced to improperly speculate regarding the cause of his injuries. *Thacker*, 151 Ill. 2d at 355. The plaintiff countered that she met her burden by showing that the defendants' asbestos circulated in the air that decedent breathed, and, in light of medical testimony that only slight exposure could cause his illness, the jury's award was justified. *Thacker*, 151 Ill. 2d at 355-56. In holding that the circuit court correctly denied the defense motion for judgment *n.o.v.*, we detailed the proper analysis to be used in determining whether a plaintiff has satisfied the burden of proof at trial.

We began by reciting the "general rule in civil cases" that a plaintiff bears the burden of producing evidence sufficient to establish each element of the claim. *Thacker*, 151 Ill. 2d at 354. We explained that a plaintiff meets the burden of production with regard to a given element of proof "when there is some evidence which, when viewed most favorably to the plaintiff's position, would allow a reasonable trier of fact to conclude the element to be proven," and cautioned that "[w]hile circumstantial evidence may be used to show causation, proof which relies upon mere conjecture or speculation is insufficient." *Thacker*, 151 Ill. 2d at 354.

Focusing upon the specific element of causation, we observed that "causation requires proof of both 'cause in fact' and 'legal cause.' " *Thacker*, 151 Ill. 2d at 354. Because the parties in *Thacker* disputed whether the plaintiff had established the defendants were a "cause in fact" of the decedent's injuries, we noted that there are generally two tests used by courts to determine cause in fact: the traditional "but for" test, where "a defendant's conduct is not a cause of an event if the event would have occurred without it"; and the "substantial factor" test, where "the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event about." *Thacker*, 151 Ill. 2d at 354-55.

Because the plaintiff in *Thacker* chose to prove that the defendants were a cause in fact of decedent's injuries through the substantial factor test, we discussed that test at length:

> "The substantial factor test requires that the alleged tortfeasor's conduct be somehow 'responsible' for producing the injury at issue. (See Restatement (Second) of Torts §431, Comment *a* (1965).) The question of whether an alleged tortfeasor's conduct meets this test is usually a question for the trier of fact, but if a contrary decision is clearly evident from a review of all the evidence, Illinois courts rule in favor of the defendant as a matter of law. [Citations.] Put in a slightly different way, Illinois courts have, as a matter of law, refused to allow a plaintiff to take the causation question to the jury when there is insufficient evidence for the jury to reasonably find that the defendant's conduct was a cause of the plaintiff's harm or injury." *Thacker*, 151 Ill. 2d at 355.

*Thacker* noted that because "unique problems [are] posed by asbestos injury," courts "have struggled with how a plaintiff in an asbestos case can fairly meet the burden of production with regard to causation." *Thacker*, 151 Ill. 2d at 356-57. Surveying the varying approaches taken in jurisdictions throughout the country, we

observed that the United States Court of Appeals for the Fourth Circuit in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), had fashioned a rule derived from section 431 of the Restatement (Second) of Torts—and which had been adopted in several other jurisdictions—to determine whether sufficient evidence of cause in fact has been presented to allow a case to go to the jury. *Thacker*, 151 Ill. 2d at 359.

In *Lohrmann*, the court upheld a district court's grant of directed verdicts to three manufacturers of asbestos products used in the plaintiff's workplace because the plaintiff had adduced insufficient evidence to establish cause in fact between the use of the products and the plaintiff's asbestosis. The *Lohrmann* court explained in detail the rationale for its decision:

> "Appellants would have us adopt a rule that if the plaintiff can present any evidence that a company's asbestos-containing product was at the workplace while the plaintiff was at the workplace, a jury question has been established as to whether that product contributed as a proximate cause to the plaintiff's disease. Such a rule would be contrary to the *** law of substantial causation. ***
>
> To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Lohrmann*, 782 F.2d at 1162-63.

The *Lohrmann* court characterized this as "a *de minimis* rule" since "a plaintiff must prove more than a casual or minimum contact with the product." *Lohrmann*, 782 F.2d at 1162.

In *Thacker*, we adopted *Lohrmann*'s "frequency, regularity and proximity" test as a means by which an asbestos plaintiff can prove more than minimum contact to establish that a specific defendant's product was a substantial factor in being a cause in fact of a plaintiff's injury. *Thacker*, 151 Ill. 2d at 359. Thus, if an asbestos

plaintiff chooses to establish cause in fact by using the substantial factor test, in order to have the question of legal causation submitted to the jury, the plaintiff must first show that the injured worker "was exposed to the defendant's asbestos through proof that (1) he regularly worked in an area where the defendant's asbestos was frequently used and (2) the injured worker did, in fact, work sufficiently close to this area so as to come into contact with the defendant's product." *Thacker*, 151 Ill. 2d at 359. It was our view in *Thacker* that "[t]hese requirements attempt to seek a balance between the needs of the plaintiff (by recognizing the difficulties of proving contact) with the rights of the defendant (to be free from liability predicated upon guesswork)." *Thacker*, 151 Ill. 2d at 359.

We concluded that under the facts in *Thacker*, the plaintiff had satisfied the frequency, regularity and proximity test to withstand a directed verdict and allow the issue of legal causation to be submitted to the jury. Because we further determined that the jury's ultimate ruling in favor of plaintiff was supportable based upon the totality of the evidence presented, we found no error in the trial court's denial of the defendants' motion for judgment *n.o.v. Thacker*, 151 Ill. 2d at 366.

In subsequently interpreting our decision in *Thacker*, however, our appellate court has erroneously concluded that *Thacker* stands for the proposition that once a plaintiff meets the frequency, regularity and proximity test, he or she thereby establishes *legal* causation. This error is evident in the opinion of the appellate panel below, which held that "[o]nce a plaintiff satisfies the *Thacker* test, a defendant is presumed to be a proximate cause of a decedent's asbestos injury." 365 Ill. App. 3d at 968, citing *Thacker*, 151 Ill. 2d at 360. This court in *Thacker* created no such presumption. The lower court's incorrect reading of *Thacker* conflicts not only with the

clear language of that opinion, but also with our goal of adopting that test to fairly balance the interests of plaintiffs and defendants in these actions.

*Thacker* reaffirmed the axiomatic rule that a plaintiff alleging personal injury in any tort action—including asbestos cases—must adduce sufficient proof that the defendant caused the injury. *Thacker*, 151 Ill. 2d at 354-55. In so doing, we reiterated black-letter, general principles of tort causation law, and repeated the well-settled rule that proof which relies on conjecture, speculation or guesswork is insufficient. Although we noted that asbestos plaintiffs face unique challenges in showing causation, we did not carve out an exception for asbestos cases which relieved those plaintiffs from meeting the same burden as all other tort plaintiffs. Rather, we adopted *Lohrmann*'s frequency, regularity and proximity test—tailored to application in asbestos actions—as a means by which a plaintiff choosing to prove cause in fact through use of the substantial factor test may meet that burden. In addition, by adopting the rationale of the *Lohrmann* decision, *Thacker* thereby rejected the argument advanced by plaintiff here—and accepted by the appellate panel below—that so long as there is *any* evidence that the injured worker was exposed to a defendant's asbestos-containing product, there is sufficient evidence of cause in fact to allow the issue of legal causation to go to the jury. As the *Lohrman* court observed, such an approach is contrary to the concept of substantial causation, as without the minimum of proof required to establish frequency, regularity and proximity of exposure, a reasonable inference of substantial causation in fact cannot be made.

Thus, when correctly viewed, *Thacker* provides a means for determining whether a plaintiff in an asbestos case has presented sufficient evidence to establish cause in fact and, thereby, shift the *burden of production* to the

defendant. We reiterate, however, that the ultimate *burden of proof on the element of causation* remains exclusively on the plaintiff, and that burden is never shifted to the defendant. For the sake of clarity, we reaffirm that *Thacker* creates no presumption on the issue of causation.

## B. Exclusion of Other-Exposure Evidence

Having concluded that no presumption of causation was created by our decision in *Thacker*, we now determine whether the circuit court's exclusion of evidence that decedent was exposed to asbestos from sources other than defendant was in error. Defendant correctly notes that in *Thacker*—unlike in the matter before us— evidence that other, nonparty manufacturers' asbestos products were present in the plaintiff's workplace was admitted, and the question of whether other-exposure evidence was admissible was not addressed. We do observe, however, that *Thacker* considered the very evidence that, in the matter at bar, the circuit court precluded the jury from hearing: that the plaintiff had been exposed to asbestos from nonparty entities. *Thacker* allowed the jury to consider all of the evidence—including that of other exposures—in deciding whether the defendants were a legal cause of the decedent's injuries. Although we ultimately held that the plaintiff had adduced sufficient evidence to support the jury's verdict in her favor, it is significant that the jury had a complete picture of all the evidence at the time it rendered its verdict. See *Thacker*, 151 Ill. 2d at 360.

In contrast, although the circuit court in the matter before us allowed plaintiff to introduce circumstantial evidence to satisfy her burden on the causation element, it also excluded evidence which defendant wished to present to rebut plaintiff's claims and to support its sole proximate cause defense. The circuit court felt compelled to bar this evidence pursuant to the decision in *Lipke*—a

case decided five years prior to our ruling in *Thacker*—and its progeny. Defendant now asks that we strike down the exclusionary rule crafted by *Lipke*—and subsequently expanded in *Kochan* and *Spain*—because it skews the facts in favor of plaintiff and leads the jury to conclude that the asbestos products of the sole defendant at trial *must* have caused the plaintiff's asbestos-related disease in the absence of evidence of any other asbestos exposures. In addition, defendant argues that this rule of exclusion conflicts with our decision in *Leonardi*, which upheld the general validity of the sole proximate cause defense and allowed a defendant to introduce evidence of other potential causes of injury so that the jury may resolve which was a proximate cause.

Plaintiff, in defending the validity of the exclusion of other-exposure evidence under *Lipke*, also relies upon *Kochan* to contend that even if such other-exposure evidence is excluded, a defendant may still show that the injured worker was not exposed to the defendant's products, or that his exposure was so insignificant as not to cause harm. Plaintiff also asserts that the exclusion of other-exposure evidence does not conflict with *Leonardi*, a medical malpractice case, because the distinctive factual natures of medical malpractice and asbestos suits require differing standards of proof to establish causation. We reject plaintiff's arguments.

In *Lipke*, the plaintiff was an insulation worker who filed a complaint against 27 manufacturers of asbestos products alleging they caused his asbestosis. Prior to trial, all but one defendant settled. At trial, the remaining defendant argued that the plaintiff did not have asbestosis but, rather, a lung disease caused by "habitual" smoking, and, in the alternative, that he had not been exposed to its asbestos products. The circuit court excluded evidence of the plaintiff's other asbestos exposures, and the jury found in favor of the plaintiff,

awarding both compensatory and punitive damages. *Lipke*, 153 Ill. App. 3d at 501.

In affirming the judgment of the circuit court, the appellate court noted that "[t]he major thrust of defendant's brief and argument is directed against the award of punitive damages." *Lipke*, 153 Ill. App. 3d at 503. Accordingly, the appellate opinion, in large part, consists of analysis of this issue. As to the defendant's secondary argument raising "a series of errors dealing with evidence, continuance and instructions," the court, in one short paragraph, disposed of the assertion that evidence of the plaintiff's exposure to other asbestos products was erroneously excluded. After noting the general rule that there can be more than one proximate cause of an injury, the court then stated:

> " 'In such a situation, one guilty of negligence cannot avoid responsibility merely because another person is guilty of negligence contributing to the same injury ***.' [Citation.] *** [W]here such guilt exists, 'it is no defense that some other person, or thing contributed to bring about the result for which damages are claimed. Either or both parties are liable for all damages sustained.' Thus, the fact that plaintiff used a variety of asbestos products does not relieve defendant of liability for his injuries. Evidence of such exposure is not relevant." *Lipke*, 153 Ill. App. 3d at 509.

This quoted passage comprises, in its entirety, the *Lipke* exclusionary rule. We note the court simply cites to basic tort law principles that are neither new, novel nor solely applicable to asbestos cases, and fails to analyze how those principles applied to the case before it. In our view, *Lipke* stands for no more than the well-settled rules that it cites: that the concurrent negligence of others does not relieve a negligent defendant from liability. When read correctly, *Lipke* simply holds that if a defendant's negligence proximately caused a plaintiff's harm, evidence that another's negligence might also have been a proximate cause is irrelevant—and therefore properly excluded—if introduced for the purpose of shifting li-

ability to a concurrent tortfeasor. *Lipke* simply determined that evidence of the plaintiff's other exposures was not relevant to the specific defense raised, *i.e.*, that the plaintiff did not have an asbestos-related disease, and he had no exposure whatsoever to defendant's asbestos products. In the matter at bar, however, defendant wishes to offer evidence of decedent's other exposures for different purposes: to contest causation through the use of the sole proximate cause defense, which was not raised by the *Lipke* defendant. As the instant cause presents a factually different situation, *Lipke* is inapposite.

In the appellate court's subsequent decision in *Kochan*, the plaintiffs brought personal injury suits against several defendants to recover damages for injuries suffered by workers who had been exposed to the defendants' asbestos-containing products. Prior to trial, all defendants except one settled with the plaintiffs. Although the remaining defendant argued that it was not a cause in fact of the worker's injuries and sought to introduce other-exposure evidence, the circuit court, relying upon *Lipke*, granted the plaintiffs' motion *in limine* to exclude such evidence. The jury returned a verdict for the plaintiffs, and defendant appealed. *Kochan*, 242 Ill. App. 3d at 787-88.

In affirming the lower court, the appellate court loosened *Lipke* from its factual moorings and unduly expanded its exclusionary rule to hold that "evidence of exposure to other asbestos-containing products is not relevant *** in cases in which actual cause or cause in fact is disputed." *Kochan*, 242 Ill. App. 3d at 789. In other words, the *Kochan* court extended *Lipke* to hold that other-exposure evidence is *always* irrelevant, and supported this holding with the questionable rationale that because it is "impossible" to determine whether a specific exposure caused injury, "[a]llowing a defendant to present evidence of a plaintiff's exposures to other

products whose manufacturers are not defendants in the trial would only confuse the jury," and, therefore, "[t]he purpose for which the evidence is offered is inconsequential." *Kochan*, 242 Ill. App. 3d at 790.

We agree with the circuit court below that *Kochan* "effectively removed from asbestos defendants any opportunity to point to the negligence of another as the sole proximate cause of plaintiff's injury." The circuit court found *Kochan* to be premised upon a "fallacious argument": although that decision purports to allow defendants to present alternative defenses that a particular exposure was not the proximate cause of a plaintiff's injury "simply by showing, for example, that plaintiff was not exposed to its products, that exposure to its products was insufficient to cause injury, or that its product contained such a low amount of asbestos that it could not have been a cause of the injury" (*Kochan*, 243 Ill. App. 3d at 790), the circuit court concluded that these claimed defenses "in reality do not exist because plaintiff will likely call an expert to testify that every exposure to asbestos is a substantial factor in causation." We also agree with the circuit court that *Kochan* is "internally inconsistent," as we fail to discern how it is both "impossible" to exclude specific exposures as a proximate cause, and yet "simple" for a defendant to defeat proximate cause at trial. Indeed, our decision in *Thacker* establishes that it is possible to exclude particular exposures as substantial contributing causes of a plaintiff's injury in asbestos cases, and that proximate cause is properly a question of fact for the jury to resolve based upon competent evidence. *Thacker*, 151 Ill. 2d at 355. The court's holding in *Kochan* improperly deprives a defendant of a rational alternative explanation, in the form of the excluded other-exposure evidence, for why the plaintiff is suffering from an asbestos-related disease.

The error of *Kochan* becomes more evident upon review of this court's decision in *Leonardi*. There, the plaintiffs, individually and as administrators of the decedent's estate, brought a medical malpractice action against several defendants seeking damages resulting from an improperly performed Cesarean-section procedure. Prior to trial, the decedent's attending physician—who was a named defendant—died and his estate settled with the plaintiffs. Thereafter, the plaintiffs filed a motion *in limine* to bar evidence relating to the alleged negligence of any person other than the remaining named defendants. The circuit court denied the motion and allowed evidence relating to the deceased attending physician's standard of care. The jury found in favor of the defendants, and the appellate court affirmed. *Leonardi*, 168 Ill. 2d at 90-92.

On appeal to this court, the plaintiffs argued that the lower courts erred in denying their motion *in limine* and allowing the jury to hear evidence of the conduct of the decedent's treating physician. The plaintiffs also advanced a broader attack against the validity of the sole proximate cause defense, which we defined as a defense which "seeks to defeat a plaintiff's claim of negligence by establishing proximate cause in the act of solely another not named in the suit." *Leonardi*, 168 Ill. 2d at 92. We noted that the plaintiffs relied upon the

> "common law principle that there can be more than one proximate cause of an injury, and that a person is liable for his or her negligent conduct whether it contributed wholly or partly to the plaintiff's injury *as long as it was one of the proximate causes of the injury*. [Citation.] A person *who is guilty of negligence* cannot avoid responsibility merely because another person is guilty of negligence that contributed to the same injury. *Where such guilt exists*, it is no defense that some other person or thing contributed to the injury. Thus, evidence of another person's liability is irrelevant to the issue of defendant's guilt." (Emphases in original.) *Leonardi*, 168 Ill. 2d at 92-93.

Therefore, the plaintiffs argued, the lower courts erred in denying their motion *in limine* because "evidence of the [attending physician's] conduct was irrelevant and, therefore, inadmissible." *Leonardi*, 168 Ill. 2d at 92.

We concluded that the plaintiffs' reliance on this principle was "misplaced," as it "presumes that a defendant's conduct is at least *a* proximate cause of the plaintiff's injury." (Emphasis in original.) *Leonardi*, 168 Ill. 2d at 93. The defendants in *Leonardi* "denied that they were even partly a proximate cause of plaintiffs' injuries," and pursued the theory that the decedent's deceased treating physician was the sole proximate cause of the injuries. *Leonardi*, 168 Ill. 2d at 93.

As we did in *Thacker*, we again in *Leonardi* emphasized that "[i]n any negligence action, the plaintiff bears the burden of proving not only duty and breach of duty, but also that defendant proximately caused plaintiff's injury." *Leonardi*, 168 Ill. 2d at 93. We also reiterated that "[t]he element of proximate cause is an element of the *plaintiff's* case *** [and] the law in no way shifts to the defendant the burden of proof." (Emphasis in original.) *Leonardi*, 168 Ill. 2d at 93-94.

We further explained that, under this analytical framework, a defendant "has the right not only to rebut evidence tending to show that defendant's acts are negligent and the proximate cause of claimed injuries," but also "has the right to endeavor to establish by competent evidence that the conduct of a third person, or some other causative factor, is the sole proximate cause of plaintiff's injuries." *Leonardi*, 168 Ill. 2d at 101. Accordingly, we expressly rejected the plaintiffs' argument—which was previously adopted by the appellate court in *Kochan*—that evidence of other possible causes for the claimed injury would confuse a jury or "distract[ ] [its] attention from the simple issue of whether a named defendant caused, wholly or partly, a plaintiff's injury."

*Leonardi*, 168 Ill. 2d at 94. To the contrary, we held that the "sole proximate cause defense merely focuses the attention of a properly instructed jury *** on the plaintiff's duty to prove that the defendant's conduct was a proximate cause of plaintiff's injury." *Leonardi*, 168 Ill. 2d at 94. We therefore overruled any "[d]ecisions that contain statements to the contrary." *Leonardi*, 168 Ill. 2d at 94.

*Leonardi* made it clear that the exclusionary rule first fashioned in *Lipke* is limited to the facts presented there, and held that it is error to extend that principle to instances where, as here, proximate cause is disputed and the defendant pursues a sole proximate cause defense. As the circuit court observed below, under such an approach, "[d]efendants are precluded from pointing to some other proximate cause since they *** are presumed [liable] *** as long as there is any evidence the plaintiff was exposed to their product." The court believed that "*Lipke* was never intended to result in a presumption of liability in asbestos cases," and we agree. Such an approach improperly removes from the jury the determination of whether a defendant's conduct is a proximate cause of the plaintiff's injury. *Leonardi* underscored that in such cases, a defendant has a right to introduce evidence to contest proximate cause, and competent evidence about others as causal factors must be allowed.[4] Accordingly, *Leonardi* overruled those decisions that held otherwise. Because *Kochan* improperly

---

[4]*Leonardi*'s rule that defendants in negligence actions are entitled to introduce evidence that some other entity was the sole proximate cause of a plaintiff's injury was reaffirmed in *McDonnell v. McPartlin*, 192 Ill. 2d 505, 520-21 (2000) (holding that "a defendant's right not only to rebut evidence tending to show that the defendant's acts are negligent and the proximate cause of the claimed injuries, but also to endeavor to establish that the conduct of a third person, or some other causative factor, is the sole proximate cause of the plaintiff's injuries and, assuming some

extended *Lipke* to hold that other-exposure evidence may be barred as irrelevant in cases in which cause is disputed, *Kochan* was overruled *sub silento* by *Leonardi*. We now make explicit what was previously implicit: we specifically overrule that portion of *Kochan* which holds that other-exposure evidence is irrelevant.

We note that subsequent to our decision in *Leonardi*, the appellate court delivered its ruling in *Spain*, wherein it not only perpetuated its erroneous interpretation of *Lipke*, but also incorrectly read our rulings in *Thacker* and *Leonardi*. In *Spain*, the plaintiff, as administratrix of her deceased husband's estate, filed suit against several asbestos manufacturers alleging that they were responsible for her husband's asbestos-exposure injuries and resulting death. Prior to trial, all defendants except one either settled or were dismissed. *Spain*, 304 Ill. App. 3d at 358. The circuit court denied the remaining defendant's motion *in limine* to present decedent's videotaped deposition concerning his multiple asbestos exposures unrelated to defendant's products, and the jury found in favor of plaintiff.

On appeal, the defendant, relying upon *Leonardi*, argued that it was prejudiced by the exclusion of the other-exposure evidence in that it was unable to support its sole proximate cause defense. In rejecting defendant's arguments, the *Spain* court erroneously reasoned that "[t]he *Leonardi* court found the *Lipke* standard inapplicable to medical malpractice cases, but did not change the law governing asbestos cases," and proceeded to apply an incorrect reading of *Thacker*—a reading which we

---

competent evidence is presented, to have the jury instructed on this theory"). The principle of sole proximate cause is also embodied in an Illinois Pattern Jury instruction. Illinois Pattern Jury Instructions, No. 12.04, Notes on Use (3d ed. 1989); *Leonardi*, 168 Ill. 2d at 101-02 (instruction proper where there was some evidence of a nonparty's involvement).

rejected earlier in this opinion—that once a plaintiff satisfies the frequency, regularity and proximity test, defendant "is presumed to be a proximate cause of decedent's asbestos injury." *Spain*, 304 Ill. App. 3d at 364-65.

Although plaintiff at bar relies upon *Spain*, that reliance is misplaced. As discussed, *Spain* conflicts with *Thacker*, and it also incorrectly interprets *Leonardi*. Plaintiff echoes *Spain*'s erroneous conclusion that *Leonardi* "generally appl[ies] in medical negligence and other basic tort cases," but does not apply to asbestos actions. To the contrary, *Leonardi*—like *Thacker*—set forth basic tort law causation principles, and nothing in our ruling suggests that it is limited solely to medical malpractice actions, or that there should be a special exception to these general principles of tort law for certain types of cases. Our ruling in *Leonardi* is universally applicable to all tort actions. Given that *Spain* conflicts with both *Thacker* and *Leonardi*, it is hereby overruled.

The single paragraph in *Lipke* from which the exclusionary rule of other-exposure evidence is derived neither suggested nor held that a defendant should be barred from introducing evidence of other potential causes of injury where it pursues a sole proximate cause defense, nor that juries should be deprived of evidence critical to a causation determination. As observed by the dissenting justice below, the appellate court's erroneous interpretation of *Lipke*, *Thacker* and *Leonardi* in its rulings in *Kochan* and *Spain* left Illinois standing alone in excluding evidence of other asbestos exposures, and conflicted with our well-settled rules of tort law that the plaintiff exclusively bears the burden of proof to establish the element of causation through competent evidence, and that a defendant has the right to rebut such evidence and to also establish that the conduct of another causative factor is the sole proximate cause of the injury. We hold

that the circuit court erred by relying on the appellate court's erroneous—and now overruled—decisions to prevent defendant from presenting evidence of decedent's other asbestos exposures in support of its sole proximate cause defense.

## C. Harmless Error

Having found that the circuit court erred in excluding other-exposure evidence, we must now determine whether that error was "harmless," as plaintiff contends, or reversible, as defendant maintains.

As a result of the trial court's exclusion of this other-exposure evidence, the jury was allowed to hear only that decedent had an asbestos-related disease, that every asbestos fiber can contribute to that disease, and that decedent had been exposed to defendant's product and no other. Hearing such evidence in a vacuum, a jury may naturally conclude that defendant's product was completely responsible for decedent's illness and death. Our case law—properly interpreted—stands for the proposition that the jury must be allowed to sort through competent—and likely conflicting—evidence so that it can fairly resolve whether exposure to a particular product was the proximate cause of injury. The circuit court itself—which excluded this evidence—recognized that its ruling made the case "undefendable" for defendant and was troubled by its own decision.

We are, therefore, compelled to reject plaintiff's assertion that any error at trial was harmless and does not require reversal. We note that the portion of plaintiff's brief devoted to this argument is devoid of citation to authority,[5] and that the thrust of her argument is simply that the jury "understood" that decedent had been

---

[5]We note plaintiff does cite to *Thacker*, but recites the now-overruled misinterpretation that it created a presumption of proximate causation and that defendant had the opportunity to "rebut the presumption."

exposed to asbestos from sources other than defendant. However, we cannot assume what the jury understood. *Cf. Maple v. Gustafson,* 151 Ill. 2d 445, 449 (1992) (when jury returns general verdict, court does not know the basis of the jury determination).

The record reflects that the jury heard only about decedent's exposure to defendant's boilers on 20 to 25 occasions during his 38-year career, and was neither informed of his other exposures, nor where, when and to what extent they were. Although both sides presented expert testimony, the exclusion of other-exposure evidence effectively disarmed the defendant's experts, as they could neither discuss any evidence revealing decedent's overall asbestos exposure from a myriad of other sources, nor opine as to correlations between the various types and duration of exposures and his mesothelioma.

Outside the presence of the jury, defendant made offers of proof that decedent was exposed to amphibole asbestos from other sources, and that it was his high-dose, repeated exposures to this fiber that caused his illness and death. For example, defense expert Dr. Sawyer opined that decedent's mesothelioma was caused by amphibole fibers contained in thermal insulation that he had contact with during his pipefitting work. Dr. Sawyer's opinion was supported by the testimony of decedent's son, who stated in an offer of proof that his father breathed asbestos dust when cutting pipe covering at the Quaker Oats plant and other sites; by plaintiff's expert, Dr. Mark, who agreed in an offer of proof that amphibole fibers are "potential high-dose, high-exposure products," that decedent experienced a significant exposure to this type of fiber as a pipefitter and that those exposures were a "significant contributing factor" in decedent's mesothelioma; by plaintiff's expert Dr. Lemen, who stated in an offer of proof that amphibole asbestos was

used in pipe covering; and also by decedent himself, who stated in a portion of his videotaped deposition that was not heard by the jury that during his work at Lauhoff Grain, asbestos dust from insulation "rained down" on him and he "certainly" inhaled it.

Defendant presented evidence that its boilers contained only chrysotile fibers, and that decedent's exposure to this type of asbestos was not the cause of his mesothelioma. Notably, no evidence suggested that defendant's boilers contained anything other than chrysotile. In addition, plaintiff's own experts agreed that there is a scientific debate as to whether chrysotile can cause mesothelioma, and even if it can, they agreed that chrysolite is the least carcinogenic of the various asbestos fiber types. However, this defense was weakened by the exclusion of evidence of decedent's extensive exposure to amphibole fibers as a pipefitter and opinions that this type of asbestos was highly dangerous and led to decedent's illness and death.

Although plaintiff maintains that the "court t[old] the jury of other asbestos exposures," this is incorrect. The record reveals that the court told the jury only that decedent filed an asbestos-related lawsuit in 1988 against various defendants other than Weil-McLain. This information, rather than helpful to defendant, could have been damaging, as the jury was left to speculate about other exposures. Indeed, as defendant points out, the jury could have concluded that decedent was suing defendant because he lost the earlier action against other defendants due to his "overwhelming" exposure to *defendant's* products. It could have also been equally plausible to the jury that the earlier action resulted in a defense verdict, or that there was a finding that the other defendants did not cause his asbestosis—an illness which was different from the one in the instant cause.

Further, a review of the closing arguments at trial highlights the difficult situation in which defendant found itself due to the exclusion of other-exposure evidence. Defendant was left to ask the jury to guess as to how decedent spent the rest of his work life even though it was the only defendant in the case, and stated that although it was the sole defendant, "it wasn't Weil-McLain that caused this problem." Defendant, however, was prevented from providing the jury with the information to answer these questions, leaving it to speculate. We also note that the absence of other-exposure evidence was exploited by plaintiff's counsel, who suggested in his closing argument that defendant's arguments were not credible:

> "All they have left is this mystery guy. Some other—it wasn't us, we weren't enough, some other dude must have done it. Where is the evidence? There is none, just speculation ***."

Finally, plaintiff relies upon the circuit court's remark early in the trial that "any intelligent jury has already figured out" that decedent had been exposed to asbestos from other sources to support its argument that reversal is not required. We note the remark was isolated and delivered in the course of the court's rejection of defendant's argument that a statement in decedent's videotaped testimony opened the door to introduction of other-exposure evidence. It stands in sharp contrast to the court's lengthy opinion filed after the conclusion of trial in which it concluded that the exclusion of such evidence had made the case "undefendable" and that defendant had been "precluded from pointing to some other proximate cause," statements which plaintiff does not address.

In sum, the exclusion of evidence of decedent's other exposures to asbestos eliminated evidence of alternative causes for decedent's injuries, improperly preventing defendant from supporting its sole proximate cause defense:

"[P]laintiffs would have the issue of proximate cause tried in a vacuum, with no reference to the other actors whose conduct may also have been a proximate cause of [decedent's] injury. In the trial scenario *** [defendant] could argue to the jury that it was not responsible for the [injury to decedent], but could not suggest who was responsible. Thus, the jury's natural question—'If not you, who?'— would be left unanswered. That result would be untenable." *Warner/Elektra/Atlantic v. County of DuPage*, No. 83—C—8230 (N.D. Ill. March 6, 1991).

Accordingly, the errors at trial compel us to reverse and remand.

Because of our disposition of this appeal, we need not reach the remainder of defendant's arguments.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate and circuit courts are reversed. We remand this cause to the circuit court for a new trial.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE KILBRIDE, dissenting:

Although I agree with the majority's conclusion that it was error to exclude evidence of the decedent's other workplace asbestos exposures, I disagree that the error in this case requires a new trial. I believe the error was harmless because the evidence admitted at trial was sufficient to apprise the jury of Clarence's repeated exposure to other sources of workplace asbestos and to provide sufficient grounds for Weil-McLain's sole proximate cause defense. Indeed, the trial judge agreed that sufficient evidence was admitted to establish another source as the sole proximate cause of Clarence's mesothelioma when

he instructed the jury on the sole proximate cause defense, over Nolan's objection. Thus, in my view, the case need not be remanded to the circuit court for a new trial.

Before this court, Weil-McLain argues that the exclusion of other-exposure evidence was not harmless because the ruling precluded the admission of detailed evidence about Clarence's other exposures to workplace asbestos, allegedly forcing the jury to decide the proximate cause issue without sufficient evidence. Weil-McLain specifically cites the evidence it claims it was improperly barred from presenting: (1) Clarence's exposure to other sources of asbestos; (2) his inhalation of dust generated when other workers installed pipe covering in a Quaker Oats plant where he worked; (3) a statement by Nolan's expert, Dr. Eugene Mark, that Clarence's exposure to pipe covering and pipe insulation not made, sold, or distributed by Weil-McLain was "a significant contributing factor in the development of his" disease; and (4) a conclusion by defense expert Dr. Robert Sawyer that Clarence's mesothelioma was caused by amphibole fibers from thermal system insulation not made, sold, or distributed by Weil-McLain.

After reviewing the voluminous and highly detailed record from the parties' two-week trial, I conclude that sufficient evidence was adduced, if believed by the jury, to allow it to find that Clarence's disease was caused solely by his exposure to asbestos from non-Weil-McLain products. Despite the trial court's ruling purportedly excluding all other-exposure evidence, the jury heard a multitude of varied references to his repeated exposure to other, more hazardous, forms of asbestos from other products in addition to his relatively minor exposure to the far less dangerous chrysotile asbestos in Weil-McLain's boilers.

Some of this evidence came from Clarence's testimony in a videotaped evidence deposition. He admitted he had

installed only 20 to 25 Weil-McLain boilers during his lifetime. Moreover, he stated he had worked not only as a pipefitter but also as an apprentice mechanic and an apprentice plumber and had performed millwright work, plumbing, pipefitting and boiler installation and repair during his 38-year career. The jury heard evidence that Clarence had been exposed to asbestos pipe covering when Clarence noted that he never saw an asbestos warning on any product, *including pipe covering*, while he was working. Based on this admission, Weil-McLain argued to the trial court that this statement opened the door to the admission of additional other-exposure evidence. The circuit court disagreed, concluding that specific introduction of that evidence was unnecessary because "it's getting in anyway to a certain extent." In the trial court's view, "any intelligent jury [would have] already figured out [that Clarence had] been exposed to all kinds of asbestos and all kinds of circumstances" based on the testimony about his work and job history. The circuit court did, however, allow Weil-McLain to point out that it did not make pipe covering and to highlight that evidence during closing argument because Clarence had specifically mentioned his exposure to asbestos pipe covering in his deposition.

Clarence's son, Randall, also testified. He told the jury that he and his father performed pipe-fitting work together at a Quaker Oats plant for 13 years and that this work took about 75% of their time. None of that work involved Weil-McLain boilers. The pair only sporadically performed outside boiler work, including some work on Weil-McLain boilers. Randall confirmed that Clarence worked on a total of only 20 to 25 Weil-McLain boilers.

Randall also testified that his father had previously filed a lawsuit alleging Clarence had developed another asbestos-related disease due to his exposure to workplace

asbestos. Defense counsel previously noted the same lawsuit in his opening statement. Moreover, at the close of evidence the trial court instructed the jury to take judicial notice that Weil-McLain was not named as a defendant in that earlier case. Defense counsel took advantage of the favorable nature of that instruction, emphasizing it during closing argument and specifically asking the jury to consider why Weil-McLain had not been named as a defendant. Contrary to the majority's speculation that the trial court's reference to the earlier lawsuit may have harmed Weil-McLain's case (233 Ill. 2d at 447), defense counsel took the opportunity to use Clarence's failure to name Weil-McLain to its advantage by specially highlighting it to the jury rather than attempting to hide or minimize its impact. After overtly using this point to support its position in this case, Weil-McLain cannot now successfully argue that the same evidence undermined its defense.

Defense counsel's closing argument also specifically noted evidence that Clarence worked on the defendant's boilers only about 25 days out of his nearly 40-year career, reminding the jury that he had many other work experiences as well. Certainly, by the end of trial the jury was well aware, as the trial court noted, that Clarence spent the vast majority of his time working around non-Weil-McLain products, including asbestos-containing pipe covering and that he had "been exposed to all kinds of asbestos and all kinds of circumstances." Defense counsel again underscored this point during closing argument by asking the jury to consider what Clarence had been doing during the majority of his work life, when he was not repairing Weil-McLain boilers.

Details of Clarence's other asbestos exposure further were revealed by expert testimony from a number of witnesses. One of Nolan's experts, William Ewing, was an industrial hygienist who had been a consultant for the

United States Public Health Service. Ewing stated that chrysotile fiber makes up 95% of the asbestos used in the United States and that Clarence received significant asbestos exposure from performing boiler work in general. Ewing also reiterated to the jury that Clarence had worked in many jobs, including plumbing, pipefitting, millwright work, and boiler repair.

Before cross-examining Ewing, Weil-McLain asked for permission to refer to Clarence's other asbestos exposures, asserting that Ewing's testimony opened the door when he noted that Clarence had not worked exclusively as a pipefitter, but had, in fact, worked in a number of different jobs. The trial court permitted Weil-McLain to "test [Ewing's] expertise *** in terms of the nature of the work and the work experience," including the type of materials involved. During cross-examination of Ewing, Weil-McLain firmly established that Clarence performed pipefitting, plumbing, millwright, and boiler repair work. Ewing explained that Clarence likely would have used asbestos-containing thermal system insulation, gaskets, valve packing, seals, and various cements, in addition to boilers and boiler components, in those jobs. Ewing added that the other work could create significant exposure to asbestos from pipe insulation or block insulation, providing more evidence that Clarence was exposed to dangerous levels of asbestos from multiple sources unrelated to Weil-McLain boilers.

Testifying for Weil-McLain, Frederick Boelter, a licensed professional engineer and certified industrial hygienist who had formerly been an OSHA compliance officer, built on Ewing's testimony. Boelter showed the jury a piece of block insulation that contained asbestos, including amosite, a more hazardous type of fiber, and noted that pipefitters often encountered asbestos-containing block insulation while working alongside insulators. He explained that it was "not infrequent that

pipefitters and insulators might be working in the same area, but the pipefitter would go first on a new construction installing the pipe systems, the insulators would follow to install the insulation, but the pipefitters would frequently remove insulation, perhaps would reapply insulation if it were a small job."

Boelter also testified about his simulations of Clarence's work on Weil-McLain's boilers both in a controlled test environment and in a house. He performed studies on four Weil-McLain boilers, performing "the 3 fundamental activities that involve a boiler; installation, repair or removal." In every case, the airborne asbestos fibers generated were within the limits set by OSHA. He believed the actual asbestos levels would likely have been even lower in a ventilated workplace. Boelter tested the asbestos released from the boilers and determined that the Weil-McLain components were pure chrysotile. After calculating the effect of installing 600 Weil-McLain boilers over a 20-year period, he told the jury that the cumulative asbestos exposure would be "tens of times lower" than the exposure received by simply breathing ordinary air over an average person's lifetime. The jury already knew that Clarence had worked on Weil-McLain boilers only 20 to 25 times, not 600 times. Boelter concluded that Weil-McLain boilers did not create a risk of any asbestos-related disease.

Another of Nolan's experts, Dr. Richard Lemen, an epidemiologist, former Assistant Surgeon General of the United States, and former acting director of NIOSH, acknowledged considerable scientific disagreement over the ability of chrysotile fibers to cause mesothelioma. He admitted that nearly all legitimate scientists studying asbestos agree that, on a dose-for-dose basis, chrysotile is less capable than other types of asbestos fiber to cause the disease. Thus, larger exposures to chrysotile fiber are necessary to develop the disease.

On cross-examination, Dr. Lemen acknowledged that Clarence described himself as a pipefitter and admitted that he had described pipefitters and plumbers as

"people who put insulation around pipes. Some people call them insulators. *** Some people call them pipefitters. But oftentimes what we have seen is that *** the pipefitters do the same type of work as what some might call an insulator. That they do work around pipes, that they have to cut through the insulation. It may be that an insulator is put on to do their work as a pipefitter."

Dr. Lemen confirmed that pipefitters also worked with thermal insulation, again establishing that Clarence had been exposed to asbestos from thermal insulation when he was not working on Weil-McLain boilers.

When asked whether Clarence performed any of the work included in his definition of a pipefitter, Dr. Lemen responded, "[i]n relationship to the boilers, no." Nolan's counsel objected when defense counsel asked "[i]n relationship to others?" and the circuit court sustained the objection. Nonetheless, Dr. Lemen's original response reminded the jury that Clarence had performed many types of pipefitting work beside repairing and replacing Weil-McLain boilers. Thus, even though the trial court did not admit evidence that Clarence specifically inhaled dust from the installation of pipe covering when he worked at Quaker Oats, Dr. Lemen's testimony established that pipefitters were commonly exposed in the workplace to the more dangerous types of asbestos found in pipe covering and other thermal insulation.

Dr. Lemen also explained to the jury that thermal insulation contained high levels of amphibole asbestos fibers and that "for pipe covering and a lot of different insulation products, amosite and crocidolite were the choice type of asbestos to use." Dr. Lemen admitted that amphibole asbestos fibers, such as amosite and crocidolite, were far more potent than chrysotile fibers. This testimony distinguished more dangerous pipe covering

materials from the asbestos in the Weil-McLain boilers found by Boelter to contain only nonamphibole chrysotile.

Additionally, the defense presented extensive expert testimony supporting its claims that chrysotile fibers were incapable of causing mesothelioma and that the amount of asbestos released from Weil-McLain boilers, as well as the overall dose received during Clarence's limited exposure to them, was too low to cause the disease. Paul Schuelke, Weil-McLain's director of product compliance, testified about the health effect from asbestos exposure while working on Weil-McLain boilers, stating that none of the company's workers, who routinely assembled the boilers, had ever developed an asbestos-related disease such as mesothelioma. During Weil-McLain's case-in-chief, Schuelke testified that "thermal system insulation" was not included in any Weil-McLain boilers, but he stated he had observed thermal system insulation on building pipes, leading to the inference that Clarence's other pipefitting work exposed him to the more dangerous amphibole asbestos found in thermal system insulation and pipe covering.

Nolan objected when Weil-McLain attempted to question Schuelke about the boiler industry's custom and practice in using asbestos components during the 1950s, arguing that the questions were an attempt to circumvent the earlier ruling barring the admission of other-exposure evidence. Although the trial court agreed to allow the evidence only for the limited purpose of establishing duty, Nolan declined the court's offer to give the jury a limiting instruction, thus permitting the jury to use that testimony to establish other asbestos exposures.

In addition, Schuelke undermined Randall Nolan's testimony about the work he and his father allegedly performed on Weil-McLain boilers. Randall testified that he and his father had worked on Weil-McLain boilers us-

ing both air cell insulation and asbestos rope. Schuelke told the jury that Weil-McLain boilers never required the simultaneous use of those components. Accordingly, any testimony suggesting that Clarence worked on a boiler using both products meant that "[t]hat boiler was not a Weil-McLain product." Schuelke further impeached Randall's recollection of replacing damaged sections of a Weil-McLain boiler by agreeing that, "if somebody describes that they had to take the entire section out to get to *** one of the broken sections" it would be "a misidentification of a Weil-McLain boiler." Schuelke similarly refuted Randall's claim that Clarence handled air cell insulation while assembling and disassembling Weil-McLain boilers, explaining the location of the air cell insulation in Weil-McLain boiler jackets prevented such contact.

In arguing that the exclusion of the other-exposure evidence requires a new trial, Weil-McLain also cites the exclusion of a statement by Dr. Eugene Mark, a pathologist at Massachusetts General Hospital, part of Harvard Medical School. In that statement, Dr. Mark concluded that Clarence's exposure to non-Weil-McLain pipe covering and pipe insulation was "a significant contributing factor in the development of his" disease. The plain language of Dr. Mark's statement, however, undermines Weil-McLain's sole proximate cause defense.

By concluding that Clarence's exposure to pipe covering and pipe insulation was a "significant contributing factor," *but not the sole factor*, in causing his mesothelioma, Dr. Mark creates a strong inference that other factors, possibly even his exposure to asbestos from Weil-McLain boilers, also "contributed" to his disease. An expert witness' recognition of the presence of multiple "contributing" factors seriously undercuts Weil-McLain's sole proximate cause theory by failing to eliminate Weil-McLain boilers as one of the possible causes of Clarence's disease.

Notably, defense counsel *was allowed* to obtain supportive evidence from Dr. Mark on cross-examination. Dr. Mark admitted that the chemical composition of amphibole fibers, including amosite and crocidolite, was different from that of chrysotile fibers. He even accepted the defense's propositions that "on a fiber-by-fiber basis, chrysotile [was] the least carcinogenic of the various asbestos fiber types" and that "a greater dose of exposure to chrysotile [would be] required than required for amphibole asbestos exposure to cause diffuse malignant mesothelioma." In addition, Dr. Mark conceded that early asbestos studies analyzed the effect of amphibole fibers found in thermal insulation, adding to the mounting evidence presented to the jury that thermal insulation, found in pipe covering not made by Weil-McLain, contained a more dangerous fiber on a dose-for-dose basis and required much lower overall exposures to cause disease than the chrysolite fibers found in Weil-McLain boilers.

Finally, the defense presented testimony from Robert Sawyer, M.D., a physician board-certified in preventive medicine, with a master's degree in public health from Yale, who taught epidemiology at the State University of New York and had worked for the EPA and with a pioneering medical researcher in the field of asbestos at Mount Sinai Hospital. Dr. Sawyer explained that the risk of mesothelioma increases as the dosage of exposure increases and that the differences between different asbestos fiber types in their ability to cause disease was huge. Due to the high temperatures present in boilers, he concluded that the asbestos in Weil-McLain boilers must have been the less dangerous chrysotile type. Dr. Sawyer stated that the risk, if any, from postprocessed chrysotile was extremely slight and that the amount of asbestos in Weil-McLain boilers was insufficient *for any type of asbestos fiber* to increase the risk of mesothe-

lioma. Sawyer added, however, that he still believed Clarence's illness was caused by his exposure to workplace asbestos, adding support to the conclusion that another source of workplace asbestos was the sole proximate cause of the disease because the chrysotile in Weil-McLain boilers could not have caused it.

Thus, even though Dr. Sawyer was not permitted to state his opinion that Clarence's mesothelioma was due to amphibole fibers in thermal system insulation, he did tell the jury that: (1) Clarence's workplace exposure to chrysotile in Weil-McLain boilers could not have been the cause of the disease and (2) some other source of workplace asbestos was the cause. In light of the testimony elicited from William Ewing, Frederick Boelter, Dr. Mark, and Dr. Lemen, stating that pipefitters often worked closely with or around pipe covering and block insulation containing dangerous amphibole asbestos from thermal insulation systems, Dr. Sawyer's excluded opinion would have added little. Contrary to Weil-McLain's claim, the exclusion of this one opinion is insufficient to create reversible error.

I agree with the trial judge's express finding that "any intelligent jury [would have] already figured out [that Clarence had] been exposed to all kinds of asbestos and all kinds of circumstances." Notably, that finding was made early in trial and was *based solely on the testimony addressing Clarence's work history*, before any expert testimony establishing the extent of Clarence's other asbestos exposures was given. Although the majority initially criticizes this finding because it came "early in the trial" (233 Ill. 2d at 448), I believe the trial court's conclusive statement so early in the case exemplifies the harmless nature of the error. Even at an early stage of trial, *well before* the admission of the many additional references to Clarence's exposure to other, more harmful, asbestos types from his work in proximity to pipe cover-

ing and block insulation, the judge was confident that the jurors were well aware that Clarence's varied work experiences subjected him to numerous other asbestos exposures.

The majority next criticizes the trial court's finding by noting that it is "in sharp contrast to" a statement in the trial court's posttrial opinion, where the court "concluded that the exclusion of [other-exposure] evidence had made the case 'undefendable' and that defendant had been 'precluded from pointing to some other proximate cause.' " 233 Ill. 2d at 448. Noticeably absent from this criticism is any mention of the express rationale underlying the "sharp contrast" in those two statements.

As stated in the trial court's posttrial ruling, the sole reason the court was "troubled" was its belief that *stare decisis* compelled it to apply the *Lipke* rule, thus *creating an irrebuttable presumption* that Weil-McLain was a proximate cause of Clarence's illness. The trial court's posttrial decision reveals that the court incorrectly believed that "the state of the law and state of science of asbestos-related disease are not in sync" because the *Lipke* rule relied on a scientific presumption that all doses of "all forms of asbestos cause all forms of asbestos-related illness." Therefore, the trial court concluded that "asbestos-product manufacturers are presumed guilty based upon a negative presumption as long as there is any evidence the plaintiff was exposed to their product" and, thus, are barred from presenting evidence of another sole proximate cause, making the cause "undefendable." The "sharp contrast" between the judge's statement early in the trial and its posttrial comments is attributable to the trial court's erroneous legal conclusion that the *Lipke* rule made the case "undefendable" by creating an irrebuttable presumption that Weil-McLain was a proximate cause of Clarence's illness. It was not due to a

change in the court's view of the type of evidence heard by the jury.

Now that this court has correctly declared the *Lipke* rule to be "inapposite" here (233 Ill. 2d at 438), the sole articulated basis for the apprehension stated in the post-trial ruling is eliminated. With the elimination of the sole basis for the "sharp contrast" between the trial court's earlier statement that the jury had undoubtedly "already figured out [that Clarence had] been exposed to all kinds of asbestos and all kinds of circumstances" and its posttrial concern that the case was "undefendable," the majority's criticism of the earlier statement is now also "inapposite."

I also note that if, after hearing all the evidence in the case, the trial court believed that its ruling actually prevented Weil-McLain from presenting evidence of Clarence's other asbestos exposures essential to its sole proximate cause defense, the jury instructions would have reflected this conclusion. Yet, instead of refusing Weil-McLain's tendered sole proximate cause instruction based on the lack of sufficient other-exposure evidence, the trial court gave that instruction to the jury, over Nolan's objection. Thus, *both early and late in the trial*, the court was not so overwhelmingly convinced that Weil-McLain had been entirely "precluded" from "pointing to some other proximate cause" (233 Ill. 2d at 442) that it could not instruct the jury on Weil-McLain's sole proximate cause defense.

By giving that instruction, the trial court demonstrated its continued belief that sufficient evidence had been admitted to support Weil-McLain's sole proximate cause defense. Indeed, if the court's view had not persisted after it heard *all* the evidence, it could not have properly given the sole proximate cause instruction. Thus, the trial judge, who was undisputedly in a superior position to evaluate the evidence and the credibility of

the witnesses during this lengthy trial, must have concluded that sufficient evidence had been admitted to support the claim that Clarence's exposure to asbestos from non-Weil-McLain products was the sole proximate cause of his illness.

Nonetheless, the majority rejects the trial court's conclusion and instead relies on a quotation from a federal trial court memorandum order and opinion where the judge denied the plaintiffs' motion *in limine* seeking to bar references to the settling defendants' liability. 233 Ill. 2d at 449, quoting *Warner/Elektra/Atlantic v. County of DuPage*, No. 83—C—8230 (N.D. Ill. March 6, 1991). The majority's reliance on the quotation is misplaced because the cases are readily distinguishable. In *Warner/ Elektra*, the trial judge was making an initial ruling on a pretrial motion, *before the admission of any evidence*, while this court is reviewing the trial court's finding, *made after the admission of all evidence*, that sufficient evidence of Weil-McLain's sole proximate cause defense existed to permit the issue to go to the jury. In *Warner/ Elektra*, the court was attempting to avoid the potential problem that the jurors would be unable to find for the defendant if absolutely no evidence was admitted showing that a third party was the sole proximate cause of the injury. In contrast, here, despite the trial court's stated exclusion of all other-exposure evidence, the record is replete with evidence that the sole proximate cause of Clarence's illness was his workplace exposure to more dangerous forms of asbestos that were unrelated to Weil-McLain's products. The problem that the *Warner/Elektra* court anticipated simply did not arise in the present case. The majority's reliance on the *Warner/Elektra* quotation is misplaced because it does not accurately reflect the circumstances here.

Although Weil-McLain's request for a new trial cites specific evidence purportedly excluded by the trial court's

ruling, my review of the record reveals that either the substance of that evidence was indeed presented or that the evidence did not substantially support a sole proximate cause defense. Both parties offered strong, conflicting evidence on Clarence's exposure to different types and amounts of asbestos fibers from a variety of workplace sources, creating a genuine question for the jury about the true cause of Clarence's illness.

"[T]he weight to be assigned to an expert opinion is for the jury to determine in light of the expert's credentials and the factual basis of his opinion." *Snelson v. Kamm*, 204 Ill. 2d 1, 27 (2003). If the jury adopted Nolan's evidence and legal theory that mesothelioma was caused, *at least in part*, by Clarence's exposure to the asbestos in Weil-McLain's boilers, it would have necessarily rejected Weil-McLain's sole proximate cause defense and entered a verdict for Nolan. No amount of additional testimony specifically naming other possible asbestos sources would alter that determination. If, on the other hand, the jury were more convinced by the testimony and evidence supporting Weil-McLain's sole proximate cause theory, it would have returned a verdict for the defendant even though it could not identify the exact alternate source of Clarence's illness. It is enough that the jury can conclude the evidence established that some entity not present at trial was the sole proximate cause and that Weil-McLain's boilers were not even a contributing cause.

Evidence identifying the specific outside sources that could have been the sole proximate cause is not necessary, or even relevant, to the jury's determination of whether the evidence proved that some source other than Weil-McLain was the sole proximate cause. The admission of more detailed identification evidence is not required to provide a sufficient basis for a jury finding in favor of Weil-McLain. Thus, Weil-McClain's sole proxi-

mate cause defense was not unfairly prejudiced due to the nature of the evidence that was both admitted and excluded here.

Also, the jury was instructed on Weil-McLain's sole proximate cause defense, over Nolan's objection, because the trial court found that sufficient evidence was admitted to allow the jurors to find that Weil-McLain's boilers did not cause Clarence's mesothelioma. The majority does not assert that the submission of this instruction was an abuse of the trial court's discretion. See *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 101-02 (1995). After being appropriately instructed, the jury returned a verdict in favor of Nolan, rejecting Weil-McLain's sole proximate cause defense.

Based on my review of the record and the evidence that Weil-McLain claims should have been admitted in its request for a new trial, I maintain that sufficient evidence was admitted, if believed by the jury, to conclude that Clarence's exposure to other asbestos sources, especially to amphibole-containing pipe covering and block insulation, was the sole proximate cause of his disease. Thus, a new trial is not warranted because Weil-McLain was able to receive a fair, albeit not perfect, trial in spite of the trial court's ruling. Thus, the ruling was harmless error in this case, and I would affirm the judgment of the appellate court on this limited ground. Accordingly, I must respectfully dissent from the result reached by the majority, despite my agreement with its analysis of the other substantive legal issues raised in this appeal.